# Columbus & Western Railway Co. v. Bridges.

*Action for Damages against Railroad Company, by Administrator of Deceased Employee.*

1. *Striking out pleading, as prolix, redundant, or frivolous.*—By statutory provision, any pleading may be stricken out on motion, if frivolous, irrelevant, or unnecessarily prolix (Code, § 2665); but the refusal to strike out is not a reversible error, unless it affirmatively appears that injury or prejudice resulted to the party complaining.

2. *Liability of railroad company, for injuries arising from defective bridges, as affected by overflows.*—In the location and construction of bridges and trestles, a railroad company is required to bring to the work the engineering skill and knowledge generally known and applied in

[Columbus & Western Railway Co. v. Bridges.]

business, having regard to the size and nature of the stream, the character and features of the adjacent country which constitutes its watershed, the relative position and formation of the abutting land, its liability to overflows, and their probable extent and effect; but is not bound to provide against unusual or extraordinary floods, such as have never been known to occur before, and which could not reasonably have been anticipated by competent and skillful engineers.

3. *Same.*—If the injury occurred from the falling of a bridge or trestle, which a railroad train was attempting to cross, during a great overflow, and the defective construction or condition of the bridge or trestle was the real or proximate cause of the injury, the railroad company would be liable, notwithstanding the unprecedented character of the flood; but, if the bridge or trestle was properly constructed, and had been constantly used without accident for fifteen years or more, and nothing occurred to indicate danger in its continuance, the unprecedented flood relieves the railroad company of liability.

4. *Negligence of watchman in giving signals at bridge.*—By statutory provision (Code, § 2590), a railroad company, like any other employer, is liable for an injury resulting from the negligence of a watchman or flag-man to give proper signals; but, when the company (or employer) has established proper signals and rules regulating their use, an engineer or conductor is not authorized to rely on a signal which is not given in accordance with the rules; and if he does rely on a signal so given, the company is not liable for any injury thereby resulting to him.

5. *Contributory negligence.*—Under the statute (Code, §§ 2590–92), as at common law, contributory negligence is available as a defense to an action for damages on account of personal injuries, or injuries causing death; and when it appears that the plaintiff's intestate was the conductor and engineer of a construction train, and was killed by the falling of a bridge while attempting to carry his train across the Tallapoosa river during the great flood of March, 1886, not acting under the orders of any superior officer, and having himself examined the bridge on the morning of the same day, when the waters were rising rapidly, the defense of contributory negligence is made out.

6. *Measure of damages, and evidence relevant to.*—Under this statute (Code, §§ 2590–92), punitive damages can not be recovered, when there is no evidence tending to prove willful, wanton, or reckless negligence on the part of the defendant; and the probable continuance in life of the plaintiff's intestate, who was killed, being an element of the pecuniary damages actually sustained, the fact that he was at the time suffering from a pulmonary disease, which affected the probable continuance of his life, is admissible as evidence for the defendant.

Appeal from the Circuit Court of Tallapoosa.

Tried before the Hon. James R. Dowdell.

This action was brought by Mrs. Anna Bridges, as administratrix of the estate of her deceased husband, John J. Bridges, against the appellant, a domestic corporation, to recover damages for the death of her husband, alleged to have been caused by the wrongful acts and negligence of the defendant, its agents and servants, while he was in its employment. The deceased was in the employment of the defendant at the time of his death, as the engineer and conductor of a construction train; and he was killed on the evening of March 29th, 1886, while attempting to carry his

train across the Tallapoosa river, by the falling of the bridge on the east side of the river, during the great overflow which then flooded the country. The action was commenced on the 18th February, 1887. During the trial, Dr. Pope, the physician who attended the deceased after he received his fatal injuries, was asked by the defendant, on cross-examination, "what was his general condition of health?" to which question the court sustained an objection, and the defendant excepted. The defendant then asked the witness, "was not the deceased suffering from pulmonory disease, for a number of years prior to this accident?" and he' answered affirmatively; but the court sustained an objection to this question and answer, and the defendant excepted.

As to the measure of damages, the court instructed the jury, "Under the statute, the damages are in their nature punitive, and the law leaves it with the'jury to fix the same, being governed by what they deem just and proper, as fair-minded, honest, and reasonable men." The defendant excepted to this charge, and requested the following charge in writing: "Under the facts of this case, punitive or vindictive damages can not be recovered." The court refused this charge, and the defendant excepted."

The assignments of error, 42 in number, embrace all the rulings of the court below, on the pleadings and evidence, the charges given, and the refusal of charges asked; but the material facts bearing on the points here decided are stated in the opinion of the court.

GEO. P. HARRISON, JR., and JNO. M. CHILTON, for the appellant, argued each of the assignments of error, and insisted on the merits—1st, that the plaintiff's evidence established no case for damages; 2d, that contributory negligence was affirmatively shown. They cited *Ellett v. Railroad Co.*, ·12 Amer. & Eng. R. R. Cases, 196–99, notes; 2 *Ib.* 166, 237; *Railroad Co. v. Reeves*, 10 Wall. 176; *Railroad Co. v. Kolb*, 84 Ala. 133; *Nelson v. Railroad Co.*, 3 So. Rep. 701; 31 Iowa, 373; 36 Amer. Rep. 662; Beach on Contr. Negligence, 39; 28 Amer. & Eng. R. R. Cases, 396.

W. D. BULGER, THOS. L. BULGER, and J. C. RICHARDSON, *contra.*

CLOPTON, J.—The statutes regulating the system of pleading require, that all pleadings shall be as brief as is consistent with perspicuity, and the presentation of the facts and matter to be put in issue, in an intelligible form; and also provide, that any pleading, unnecessarily prolix, irrelevant, or frivolous, may be stricken out on motion of the adverse party.—Code, 1886, §§ 2664, 2665.   It may be conceded, that some of the counts of the complaint contain irrelevant and redundant averments, which should have been stricken out on motion of defendant.   But the refusal of the court to strike them out is not a reversible error, unless it affirmatively appears that thereby prejudice resulted to defendant.—*Goldsmith v. Picard*, 27 Ala. 142.

Plaintiff's intestate was an employee of defendant, in the capacity of conductor and engineer of a construction train. The injuries which caused his death, were received while attempting to pass with his train over a bridge across the Tallapoosa river, from the west to the east side.   The trestle, which constituted the approach to the bridge from the east, gave way under the weight of the train, in consequence of the foundations having been washed out by overflowing water, caused by an unusual flood.   The action is brought by plaintiff, as administratrix, under the "Employer's Act," which composes sections 2590–2592 of Code of 1886.   Negligence is charged in two respects: first, in the alleged defective foundation of the trestle; and secondly, in the signal averred to have been given by the watchman at the bridge.

The rule governing the liability of railroad companies, for injuries caused by floods, should be regarded as well defined and settled, by an almost unbroken line of adjudicated cases. It rests on the general principle, that the measure of the company's duty, in constructing and keeping the ways, works, machinery and plant free from dangerous defects, is such care and diligence as a man of caution and prudence would exercise under like circumstances.   The company is bound to bring to the construction of its ways and works the knowledge and skill of engineering generally known and applied in such business, and to provide against such casualities, as a cautious and prudent man, possessing the same knowledge and skill, would or should reasonably foresee and anticipate.   In the location and erection of bridges and trestles, regard should be had to the size and nature of the stream, the character and features of the adjacent

country, the relative position and formation of the abutting land, its liability to overflows, and their probable extent and effect. They should be so constructed, as not to be subject to the risks and perils arising from rainfalls, known to experience to be incident to the particular section of the country, though rarely occurring, or which competent and skilled engineers should reasonably anticipate. But they are not bound to provide against unusual or extraordinary floods, such as have never been known to occur previously, and which could not have reasonably been foreseen by competent and skillful persons.

*Pitts., Ft. Wayne & Chic. Railway Co. v. Gilleland,* 56 Penn. St. 445, was an action for an injury caused by the continuance of a culvert, which, it was alleged, was so negligently constructed as not to furnish sufficient vent for all the water flowing down the channel of the stream, After substantially saying, that in such case proper engineering should observe the size of the stream, the character of its channel, and the declivity of the circumjacent territory which forms the water-shed, and supply the means of avoiding the injury which would result from locking up the natural flow, or obstructing its passage, so as to cause a reflux in the times of ordinary high water, Agnew, J. says: "Beyond this, prudent circumspection can not be expected to look, and there is, therefore, no liability for extraordinary floods—those unexpected visitations, whose comings are not foreshadowed by the usual course of nature, and must be laid to the account of Providence, whose dealings, though they may afflict, wrong no one."

The evidence clearly establishes that the flood was not only unusual and extraordinary, but greater and more destructive than had ever before happened in the memory of the inhabitants—a flood which human ken could not have foreseen, nor the greatest caution and prudence could have reasonably anticipated. There is no liability on defendant, for not having provided against the dangers and consequences of such a flood.—*Inter. & Gr. Nor. R. R. Co. v. Halloren,* 3 Amer. & Eng. R. R. Cas. 343; *H. & T. Cen. Railway Co. v. Fowler,* 8 Amer. & Eng. R. R. Cas. 504; 12 Amer. & Eng. R. R. Cas. 196; Patterson Railway Ac. Law, §§ 30, 31.

Not controverting this rule, plaintiff contends, that there was negligence on the part of the company, in the construction and maintenance of the foundations of the trestle, which concurred with the flood in producing the injury to

her intestate. Notwithstanding the flood may have been unusual and unprecedented, if the insufficient construction of the trestle was the proximate and real producing cause of the injury, the defendant would be liable; but, if the flood was of such overpowering and destructive character as to produce the injury, apart from and independent of the particular negligence alleged in constructing the foundations of the trestle, there is no liability, though there may have existed some negligence in their construction and maintenance. *B. & O. R. R. Co. v. S. S. S. Dist.*, 96 Penn. St. 65. The true test is, was the trestle so negligently constructed as to be insufficient and insecure in cases of usual and ordinary floods, incident to that section? If it was sufficient and safe, at such times, though insufficient to stand against extraordinary floods, negligence in its construction can not be regarded as the real producing cause of the injury. The evidence shows that the trestle had been constructed about fifteen years previously, in the manner in which such trestles are generally constructed by the best managed railroad companies, and had stood, during all that period, on the same or similar foundations, affording safe passage for engines and trains without accident or objection; and nothing is shown to have occurred which indicated danger in its continuance. On these facts, the court should have instructed the jury, that there is no ground to impute negligence to defendant in its construction or maintenance.

The plaintiff, however, further insists, that the negligence of the watchman at the bridge, in giving the safety, instead of the danger signal, when the train was approaching the bridge from the west, concurred with the flood in causing the injury. The contention is based on sub-division four of section 2590 of Code, 1886, which provides, that the employer is liable to answer in damages to the employee, "when such injury is caused by reason of the negligence of any person in the service or employment of the master or employer, who has the charge or control of any signal, points, locomotive, engine, switch, car or train upon a railway, or of any part of the track of a railway." On the question of fact, whether any signal was given, the evidence is in conflict. Railroad companies have authority, and, it may be said generally, it is their duty, to prescribe suitable rules and regulations for the direction and management of their trains, for the purpose of protecting their employees, as well as passengers. The rules provided by defendant were introduced

in evidence, and prescribe the manner in which signals must be given, to signify whether the train shall *move forward, stop, or move backward*; and also, that the person of the watchman must be kept in sight, as a signal to approaching trains that all is right. There is also evidence that the signal of safety must be given at the end of the bridge, which is being approached by the train. Unless a signal is given in accordance with the rules of the company, a conductor or engineer is not authorized to rely on it; and if he does, and injury ensues to *him* in consequence thereof, there being no other act of negligence contributing to produce it, the negligence which renders the company liable under the fourth sub-division of section 2590, can not be imputed to the company.

We have heretofore held that the "Employer's Act" does not take from the employer the defense of contributory negligence.—*M. & B. Railway Co. v. Holbourne*, 84 Ala. 133. The statute expressly declares, that the employer is not liable, if the employee knew of the defect or negligence, and failed, in a reasonable time, to give information thereof to the employer, or to some person superior to himself in the employment of the employer, unless he was aware that the employer, or such superior, already knew of such defect or negligence. In this case, there was neither time nor opportunity in which to give the defendant notice, and the company could not have known of the defect or negligence—no room for the operation of this provision of the statute. No person, superior to plaintiff's intestate in the employment of defendant, is shown to have been present. He was both conductor and engineer of his train, directed its management, and controlled its movements. He was under no orders from any superior to move his train from the west to the east side of the river on that evening. His attempt to cross the bridge was of his own volition, no doubt prompted to do so by a desire to be, on the next morning, at the place most convenient to prosecute the work in which he was specially engaged—repairing the trestles, which had been washed out on either side of the river. The evidence tends to show that he had examined the bridge during the day, and knew, or should have known, that the water was rapidly rising. If he knew the manner in which the trestle was constructed, the unprecedented character of the flood, the imminent danger to the trestle by the overflow of the river, and the rapid rising of the water, and with such knowledge,

[Glennon v. Mittenight.]

and under such surroundings, attempted, without compulsion or necessity, the hazardous passage of the bridge, his negligence sufficiently contributed to his injury to defeat a recovery by plaintiff.

Section 2591 authorizes the personal representative to maintain an action, if the injury results in the death of the employee, and directs the distribution of the recovery. The statute does not prescribe or fix the measure of damages, neither are they submitted to the arbitrary discretion of the jury. It has no punitive purpose, and the common-law rules as the measure of damages are applicable. It is wholly unlike, in its objects and purposes, the statute of February 5, 1872, which was intended to prevent homicide. As pecuniary gain from a continuance of life constitutes an element of damage in this class of cases, the court should have admitted the evidence, that plaintiff's intestate was afflicted with a pneumonic complaint, which affected the probable continuance of life. There is no evidence tending to prove, or from which could be inferred, willful, wanton, or reckless negligence on the part of the company. The charge requested by defendant, that on the facts punitive or vindictive damages can not be recovered, should have been given.—*A. G. S. R. R. Co. v. Arnold*, 84 Ala. 159.

We have considered and endeavored to state the principles which should govern the case on another trial, without applying them specially to the several rulings of the court, deeming such application unnecessary; and, as there was no opportunity to give the defendant information of the defect or negligence, we regard it unnecessary to consider the demurrer, based on the ground that the complaint omits to aver such facts.

Reversed and remanded.