## ANNIE KATE WHITFIELD *v.* THE CITY OF MERIDIAN.

1. MUNICIPAL CORPORATION.  *Negligence.  Defective streets.  Want of funds..
   Power to tax.*
     A want of funds and an absence of power to raise money by taxation or to en-
     force contributions of labor will free a municipal corporation from·
     liability for injuries caused by defective streets; but not so where the char-
     ter gives extensive powers of taxation for laying out and repairing streets.
     and avenues.

2. SAME.  *Street infrequently used.*
     A city or town is not called upon to open and grade new streets in advance of·
     public needs, and even where the street has been recognized as a public way,.
     a less degree of care will suffice for one infrequently used than for those in
     the heart of the town.  But it does not follow, because a way is seldom
     used, that the city may permit pit-falls or dangerous places to remain in it..

3. SAME.  *Street unsafe.  Knowledge of authorities.  Damages.*
     It is the duty of the city to know within a reasonable time of obstructions or·
     dangerous places in streets.  Even in case of a street infrequently used,.
     where an unsafe condition, which is easily observable, has existed for five
     or six years, it is to be assumed that the city knew of the same or ought to·
     have known by the exercise of ordinary diligence ; and one who is injured
     by reason of such defect may recover damages from the city.

4. NOTICE OF DEFECT.  *Actual and constructive.  Negligent ignorance.*
     It is not incumbent upon one who has sustained damage to prove that the
     city had actual notice of the defect by which the injury was caused.  The
     circumstances of each case must determine whether constructive notice is·
     to be attributed to the authorities.  But where the defect is manifest and
     of such dangerous character as to obtrude its existence to the most casual
     observer, and has existed a number of years, the authorities can only be ig-
     norant, if at all, by neglecting all supervision of streets in that locality.

5. STREET.  *Acceptance by authorities.*
     Evidence showing that a street has been laid out and used as such for many
     years, that it is indicated on city maps, and has been recognized by the·
     authorities as a public highway, though without formal adoption, is abun-
     dantly sufficient to establish its acceptance by the corporate authorities as
     one of the streets of the city.

FROM the circuit court· of Lauderdale county.
HON. S. H. TERRAL, Judge.

Appellant sued the city of Meridian for damages on account of an injury received by her in consequence of a defect in the sidewalk of one of the public streets in the city.   The declaration contains two counts.   In one it was alleged that the city carelessly and negligently graded the streets known as 13th street and 24th avenue, so as to make the place where the injury occurred dangerous. The other count alleged that said streets, at the point of intersection, were in an unsafe and dangerous condition, and that the city negligently permitted them so to remain, in total disregard of the rights of all persons using them.

Defendant pleaded the general issue, and under it gave notice that evidence would be offered to show that plaintiff by her own negligence, contributed to the injury; " and that the city did not have any funds, during the time said place was said to be out of repair, and where said injury is said to have occurred, with which to repair said place, the said city having expended all of its funds on the streets of said city."

On behalf of plaintiff the testimony showed that on the night of the 17th of March, 1887, the plaintiff, a young lady, was walking with a gentleman escort along the sidewalk on 13th street, when they came to its intersection with 24th avenue and were suddenly and unexpectedly precipitated over an embankment and fell a distance of five or six feet, whereby plaintiff's ankle was broken. The place was some distance from the home of plaintiff, and neither she nor her escort knew of the danger.   The street was remote from the business portion of the city and was not much traveled or was not used by a great many persons.   But it was within the corporate limits, was known and recognized as one of the public streets of the city, was indicated on maps and profiles used by the city authorities, and, while it had never been accepted by formal adoption, it had been worked by the city, and had been used for many years as a public highway.   Plaintiff offered in evidence certain maps and profiles of the grades of streets of the city, with the view of establishing that the place of the injury was at the intersection of two recognized public streets; but, because the plaintiff was unable to show any formal adoption of the maps by

·ordinance, the evidence was excluded. By reason of the difference in grade, one street was higher than the other, and the sidewalk on 13th street ended abruptly at an embankment which was walled up by plank, and the plaintiff, without warning, stepped over this ·embankment. There was no railing, nor anything to give notice ·of the danger. The streets were originally graded at this point and left in the condition stated by an adjacent owner, who made the sidewalk and planked up the embankment where the injury ·occurred five or six years before plaintiff was injured.

The evidence for defendant showed that the city had no funds for street purposes before and at the time of the injury ; that the money raised for this purpose by taxation, and five thousand dollars borrowed money besides, had been exhausted, and hence the ·city had no means to repair the street in question. The evidence as to this did not show that the city had exhausted all its power to raise money by taxation, and its power to enforce contributions of labor for street purposes. It was also shown that 24th avenue was uninhabited north of where the injury occurred ; that very few persons lived in the vicinity of the accident on either street, and that the means of the city had been used in opening, grading, and repairing streets in other portions of the town where the streets were very much more needed and were more generally used. It was further shown that there were a great many other places in the ·city where work was as badly needed as at the place in question ; that there were a number of streets and walks in the city that had never even been opened; that the street commissioner worked in the populous parts of the city, where the demands of the public required it, and went as far as the resources enabled him to go. Plaintiff objected to the introduction of this evidence, and the ·objection was overruled. Verdict and judgment for defendant. A motion for a new trial was overruled, and plaintiff appealed.

*Miller & Baskin,* for appellant.

1. The uncontroverted fact is that the place where the injury ·occurred was in a dangerous condition, being either made so by ·defendant or suffered to remain in such condition after it should have been known. The evidence conclusively shows that this

place was on one of the public streets of the city. *Brusso* v. *Buffalo,* 90 N. Y. 679 ; 46 Am. R. 123 ; Dill on Mun. Cor., § 1009 ; Morrill on City Neg. 66 ; *New York* v. *Sheffield,* 4 Wall. 189 ; *Rehberg* v. *Sheffield,* 4 Wall. 189.

2. The court erred in allowing testimony to go to the jury that other streets in the city were dangerous and equally in need of repairs as the one in question. Defendant was not absolved from duty as to this street because others were in need of repair. It has assumed control of all the highways in the city, and it has very extended powers of taxation for street purposes under the charter. For this reason, it was also erroneous to admit testimony that the street in question was in a sparsely settled part of the town ; this was no defense to the action.

3. The public may use *all* the streets of the city. If they could not be made safe for travel, guard-rails, or some means of warning travelers of the danger should have been provided. This was a trap. *Bunch* v. *Edenton,* 90 N. C. 431 ; *Wilson* v. *Atlanta,* 63 Ga. ; *Kenyon* v. *Indianapolis,* 1 Wil. (Ind.) 139 ; *Moody* v. *Osgood,* 54 N. Y. 488 ; *Hayes* v. *Cambridge,* 138 Mass. 461 ; *Rugles* v. *Nevada,* 63 Iowa 185.

The fact that the city had no light at the dangerous place is negligence. *Indianapolis* v. *Scott,* 72 Ind. 196 ; Morrill on City Neg. 199.

Municipal corporations having the powers ordinarily conferred upon them as to streets, owe to the public the duty to keep them in a safe condition for use in the usual mode by travelers, and are liable for injuries resulting from neglect to perform this duty. *Bell* v. *West Point,* 51 Miss. 287 ; Dill on Mun. Cor., § 1027; *Barnes* v. *Columbia,* 91 U. S. 540 ; *Bassett* v. *St. Joseph,* 14 Am. R. 446 ; *Tallahassee* v. *Fortune,* 52 Am. Dec. 538 ; Morrill on City Neg. 61, and authorities there cited.

4. The authorities cited as to want of funds have no application,. because here the city had ample power under its charter to raise funds and did not exercise it. We construe *Bell* v. *West Point,*. 51 Miss. 287, as fixing liability irrespective of whether the city had funds. On this point see *Peach* v. *Utica,* 10 Hun (N. Y.) 477 ; *Albrittin* v. *Huntsville,* 60 Ala. 486.

*Williams & Russell*, for appellee.

1. It was competent for the defendant to show the efforts it had made to keep the streets safe and the limitations of its powers. *Tinkham* v. *New York*, N. Y. Daily Reg., October 22, 1883.

2. It was also competent to show the extent of its streets, the amount of travel, the number of similar dangers, and its facilities for removing obstructions. *Reed* v. *New York*, 31 Hun (N. Y.) 311.

3. It was also competent to prove the want of funds to improve all the defects in the streets of the city. *Hines* v. *Lockport*, 50 N. Y. 236 ; *Weed* v. *Ballston*, 76 N. Y. 329.

Especially do we insist that all this proof is competent in this case, in reference to a growing city, adding constantly new territory, laying out new streets, and providing, as best it can, for its rapidly increasing population.

By its charter Meridian can only levy one per cent. on the valuation of property, and can only borrow five thousand dollars.

4. The case was fairly submitted to the jury. This court will not disturb a verdict unless it is *manifestly* wrong.

" Municipal corporations are not liable for *every* accident in their streets. They are not *insurers* of those who use them. Their duty is discharged when they have made them *reasonably safe*." *Vicksburg* v. *Hennessy*, 54 Miss. 396. Will the court hold that all elevated sidewalks must have guard-rails to prevent careless people from walking off?

Municipal corporations are not " required to furnish the best possible method of passing around natural obstacles. Their duty is discharged when they have made the streets reasonably safe for people of ordinary prudence."

Notwithstanding, the court may think there was error in the admission of testimony, it is without prejudice, and the judgment should be affirmed.

COOPER, J., delivered the opinion of the court.

We do not dissent from the proposition advanced by counsel for appellee, that a want of funds and an absence of power to raise

money by taxation or otherwise, or to enforce contributions of labor from the residents of the town to repair its streets, would free it from responsibility for injuries sustained by reason of defective streets or sidewalks.    The liability of a town for injuries caused by defective ways springs from its negligence in the performance of corporate duties, and that cannot be said to be a duty which the municipality has no power or agency to perform.    But the proof introduced by the defendant falls short of the principle it was intended to support.    By its charter the city of Meridian is given extensive powers of taxation over property, persons and privileges, and one-half of the taxes derived from real and personal property is directed to be appropriated to " the laying out, grading, improving and keeping in repair the streets and avenues of the city."

The real position assumed by the city is that its revenues appropriable to its streets were expended in other and more populous parts of the city, leaving no sums to be devoted to repairs of streets in less frequented parts, by reason of which the street where the accident occurred, as well as many others, had never been graded or worked upon.    The defense of want of funds is really blended with another which is more prominently set forth, and is that the city was not bound to open and put in repair the street on which plaintiff was walking when injured, because it was not needed for the use of the public generally, and if graded would have been used by only one or two families.

It is true, we think, that a town is not called upon to open new streets in advance of public needs, and even where a street has been accepted—recognized as a public way—a different and less degree of care may suffice for one infrequently used, than for those in the heart of the town.    But it does not follow because a way is but little used that the city may permit pit-falls and dangerous precipices to be made and continued in it.

It appears that many years ago one Stone, who then owned the adjacent property, threw up a part of the street forming a sidewalk, which ended at the intersection of 13th street with 24th avenue in a precipitous descent of some five or six feet.    One unac-

quainted (as was the plaintiff) with the way, who walked along 13th street toward 24th avenue, might well suppose that a way would be found into the avenue. Walking in the day, the condition of things would be at once observed, but in the darkness of night the probabilities are that the ordinary traveler would first know of the danger by walking over the descent. This condition of things had existed for five or six years, and was either actually known to the city, or ought to have been known by the exercise of ordinary care. It was the duty of the city to know within a reasonable time of obstructions placed in the streets by others, and to cause the same to be removed.

It is not incumbent upon one who has sustained damage to prove that the city had actual notice of the defect by which the injury was caused. Negligent ignorance is no less a breach of duty than wilful neglect. The circumstances of each case must determine whether constructive notice of the defect is to be attributed to the corporate authorities, but where, as here, the defect was manifest and of such dangerous character as to obtrude its existence to the most casual observer, and had existed through many years, but one conclusion can be reached, and that is that the authorities of the city could only have remained ignorant by neglecting all supervision of the streets in that locality.

The evidence introduced by the plaintiff was abundant to show that 13th street had been accepted by the corporate authorities and was one of the streets of the city.

*The judgment is reversed and cause remanded.*