THOMAS G. FEWELL ET AL. v. CITY OF MERIDIAN.

[43 South., 438.]

1. MUNICIPALITIES. *Defects in sewers and drains. Notice. Adoption of drain.*

Where a municipality assumed and exercised control and dealt with a manhole and a cross-pipe as parts of its drainage system, it is liable to the owner of adjacent premises for damages resulting from their wrongful construction, if, being duly notified of the defects, it fail to make correction, although the cross-pipe was originally placed in position by a previous owner of the premises.

2. SAME. *Insufficient drainage.*

A municipality is liable for damages due to the insufficiency of an artificial drain substituted by it for one originally on plaintiff's premises.

FROM the circuit court of Lauderdale county.

HON. ROBERT F. COCHRAN, Judge.

Fewell and wife, appellants, were plaintiffs in the court below; the city of Meridian, appellee, was defendant there. From a judgment for defendant the plaintiffs appealed to the supreme court.

Plaintiffs owned and occupied as a homestead a lot in Meridian, having purchased it from one Meyer. The lot was lower than the surrounding property, and the city constructed drains and sewers to carry off the surface water which passed along the adjacent streets, and constructed a manhole in a street in front of plaintiffs' lot into which the surface water flowed. Meyer, who built the house on plaintiffs' lot, run a sanitary sewer pipe from his house to the city sewerage system, which was passed through the manhole in front of plaintiffs' property. Plaintiffs' declaration alleged that the drainage pipes constructed by the city were insufficient to carry off the surface water, and that the sewer pipe running through the manhole

in front of plaintiffs' property obstructed the flow of water through the drain pipe leading from the manhole, and thereby caused the drainage pipes to overflow and divert the water on to plaintiffs' property, to their damage. It was further alleged that it was the duty of the city to construct proper drains to carry off the surface water and to refrain from turning water on plaintiffs' property, and that, though frequently notified by plaintiffs of the defective condition of the drainage pipes and improperly constructed manhole through which the sewer pipe ran, the city refused to remedy same, but continued to maintain the defective and imperfect drainage system, and that by accumulation of water on plaintiffs' property it was depreciated in value. The case went to the jury under instructions from the court, and a verdict was returned for defendant. The actions of the trial court in granting instructions for the defendant and refusing an instruction asked by plaintiffs were assigned as errors.

*Bozeman & Fewell,* for appellants.

Notwithstanding the legal duty upon the city to remove the obstruction, and the admission of the city that it had knowledge of its existence, the court below yielding to and persuaded by the able and plausible argument of counsel for appellee, supported by ancient and "webbed over" authorities wholly inapplicable to this day of modern improvements and new doctrines, presented to the jury by instructions, as the law, the monstrous proposition "that if the plaintiffs maintained the obstruction in the city pipes, and they contributed to plaintiffs' property being injured, the plaintiffs cannot recover."

After the construction of drains and sewers, although originally this was a discretionary duty, yet, the obligation to maintain them in a safe and suitable condition is not of that character, and the city must perform duty in these respects or become liable for injuries suffered. A municipal corporation cannot in respect to the construction or maintenance of a drainage

or sewerage system, especially in its discharge, create either a public or private nuisance, for the former it is subject to indictment, in some jurisdictions, and for the latter it will be liable for damages shown. In Williams' Municipal Liability for Torts this is stated: "It makes no difference by whom drain or sewer was constructed provided it appears the municipality had assumed and exercised control over it. Hence even though built by private individual, the municipality by adopting it to the use of its public is responsible for its proper maintenance as if constructed by it or its agents, citing: *Emery* v. *Lowell,* 104 Mass., 13; *Taylor* v. *Austin,* 32 Minn., 247; *Chalkley* v. *Richmond,* 88 Va., 402; *Schroeder* v. *Baradoo,* 93 Wis., 95.

As to what is proper maintenance see Williams' Municipal Liability for Torts, pp. 256 to 272.

A city which allows an obstruction to remain in a street (sewer or drain) for an unreasonable length of time is liable to the same extent as if it had placed the obstruction. *Senburn* v. *Evansville,* 40 N. E., 69, 23 Am. Dig., 2567, *et seq.*

As to the city's duty to keep in repair, etc., its drains and sewers, see: *Seifert* v. *Brooklyn,* 54 Am. Rep., 664, 10 Am. & Eng. Ency. L. (2d ed.), 220, 240, 239, 18 Am. St. Rep., 158, 68 Am. St. Rep., 92, 6 Am. St. Rep., 422, 56 Am. St. Rep., 245, 79 Am. St. Rep., 779, 29 Am. St. Rep., 730, 90 Am. St. Rep., 922.

We take it that the real defense of the city in this suit is on the idea that the property now is in the same condition as it was when bought by the plaintiffs, appellants. If this be true then the case recently decided by our supreme court on November 26, 1906, *Vicksburg* v. *Richardson, ante* 1, s.c., 42 So. Rep., 234, decides this point against the city. In that case it was contended that the property of Mrs. Richardson was in no worse condition when suit was brought than when she bought the property and that therefore she could not recover against the city. But the supreme court says: "The city officers were repeatedly notified of this, but took no steps

to remedy the evil, etc.  And the supreme court affirmed a judgment for Mrs. Richardson procured on a peremptory instruction.  The supreme court in this last case cited with approval the case of *Chalkley* v. *Richardson,* 29 Am. St. Rep., 741.

"The authorities seem to be generally agreed that a city will not be liable for injuries caused to individuals by an obstruction in a public sewer, not placed there by its officials, nor by authority of the city, until after actual notice of such obstruction or until, by reason of lapse of time, notice may be presumed citing cases."

*Neville & Wilbourn,* for appellee.

Counsel for appellants seem to lay much stress upon the late case of *Vicksburg* v. *Richardson, ante* 1, s.c., 42 South., Rep., 234, and to be under the impression that the defense of appellee in the instant case is really predicated of the idea that the property is now in the same condition as it was when bought by appellants.  In this they are mistaken.  The *Richardson case* has no sort of application to the case at bar, nor are we contending that the continuation of the same conditions that existed before appellant's purchase would alone constitute a defense to the city.  The *Richardson case* is easily differentiated from the case at bar.  In the first place, Mrs. Richardson's suit was predicated of the city's permitting and sanctioning an unlawful and detrimental use of its gutters over her protest and after notice by third parties, a question not even remotely involved under the pleadings and facts in this case.  The allegation about the obstruction by the cross-pipe in the manhole is that the city crossed the pipe through the manhole itself, and itself actively created and failed to remove the obstacle or obstruction in the manhole, which allegations were not sustained by the proof.  Again, in the *Richardson case,* the only hope for a remedy by Mrs. Richardson was through the action of the city in preventing the unlawful acts of others; whereas in the instant case, appellants could themselves have remedied, and

should themselves have remedied the conditions created by their predecessor in title and existing at the time of their purchase by having the sanitary sewer pipe, which crossed through the manhole and which connected their own premises with the city's sewer and which was entirely without default on her own part and wholly without remedy unless the city should intervene.

We do not see, therefore, wherein appellants can take comfort from the fact that the appellee knew that the sewer pipe was in the manhole. If appellee knew of its presence there and suffered it to remain after notice, not only have appellants not predicated their suit of such a theory, but in addition appellants themselves knew the sewer pipe was in the manhole and themselves suffered it to remain. Under the facts of this case, therefore, the knowledge of the city that the sewer pipe was through the manhole does not fix liability upon the appellee.

Nor can we see the relevancy of counsel's contention that Meyer, predecessor in title, who had the sanitary pipe put through the manhole connecting his premises with the main sewer of the city, was at the time this was done a member of the board of aldermen. Counsel seems to consider it conclusive upon the question of notice to the city. Surely it will not be contended that the act of the individual, Meyer, in this instance in connecting his private premises with the main sewer of the city was in any sense of the word an act of the city, for it was done in his private capacity for his private benefit and wholly aside from and disconnected from any of his duties as an alderman.

The theory of the law embodied in the instructions in this cause does not place any higher duty on anyone than the duty which has long rested upon all plaintiffs, namely, the duty to show that they have done all in their power to reduce or prevent their damages, and that the injuries of which they complain did not result from conditions known by them to exist and which they had equal opportunity themselves to relieve. *Dallas* v. *Cooper,* 34 S. W., 321; *Macon* v. *Small,* 108 Ga.,

309; *O'Brien* v. *Worcester,* 142 Mass., 348; *Breuck* v. *Holyoke,* 167 Mass., 142; *Kosmak* v. *New York,* 53 Hun, 329; *Beafeld* v. *Verona,* 41 Atl., 651; *Fair* v. *Philadelphia,* 88 Pa. St., 309; *Flagg* v. *Worcester,* 13 Gray, 601; *Barry* v. *Lowell,* 8 Allen, 127; *Mills* v. *Brooklyn,* 32 N. Y., 489; 2 Dillon's Mun. Corp., pp. 935, 936; 24 Am. & Eng. Ency. L., p. 942; *Weis* v. *Madison,* 39 American Records, 135; Gould on Waters (2d ed.), secs. 261, 262, 270.

WHITFIELD, C. J., delivered the opinion of the court.

We have given this record the most careful examination, going over it repeatedly. The cause of action set forth in the declaration is chiefly the failure of the city to properly construct and maintain pipes of sufficient size to carry off the surface water accumulating in the manhole in front of the appellant's premises, though it is subsidiarily charged that the city had "negligently crossed through said manhole another pipe, and that this said cross-pipe caught filth, drift, etc., and thus stopped the flow of even the small quantity of water which was ordinarily accommodated by said pipes." We must look to the substance of things, get at the very right of the cause, not losing sight of justice by losing ourselves in a maze of technical speculations; and, so looked at, this declaration states the cause of action as we have put it. We must remark here that the instructions in the case for the most part show the greatest care and accuracy on the part of the accomplished circuit judge who tried this case, one of the ablest and most fearless of all the circuit judges who have ever adorned the circuit bench in this state. In all respects, save one, he seems to have correctly announced the law; and that error consisted in this misconception. His idea seems to have been, as shown in the two following instructions given to the defendant, that, if the predecessor in title of the plaintiff put the cross-pipe through the manhole, then the city was not liable for the damages which might follow therefrom, although it had been notified of the fact that this

cross-pipe was a defect in the construction and maintenance of the manhole, and requested to rectify the trouble, and although the city had assumed and exercised control over the manhole, and, of course, the cross-pipe going through it.

The two instructions we refer to are as follows: "If the jury believe from the evidence that the overflows of which plaintiffs complain are occasioned by the sanitary sewer pipe connecting plaintiffs' premises with the city sewer, in the manhole of the drain in front of plaintiffs' premises, and that said sanitary sewer pipe was placed through said manhole by plaintiffs' predecessor in title, after the construction of said manhole, and that plaintiffs since purchasing the property have continued to permit said sanitary sewer pipe to remain through said manhole, then the jury will find for the defendant." "The court instructs the jury, for the defendant, city of Meridian, that if the overflow of plaintiffs' premises, of which plaintiffs complain, does not result from conditions created directly by the city, then plaintiffs cannot recover, and that if the jury believe from the evidence that the defendant laid its pipes and built its manhole in front of the premises of plaintiffs, and that said pipes and said manhole were not negligently constructed, and that the defendant did not turn through said pipes and manhole any more water than customarily and ordinarily flows naturally therein, and that afterwards plaintiffs' predecessor in title placed a sanitary sewer pipe through the said manhole, connecting the sewer of plaintiffs' premises with the main sewer of the defendant, and that plaintiffs' predecessor in title and plaintiffs have continued to permit said sanitary sewer pipe to remain through said manhole, and that the existence of said sewer pipe in said manhole occasions the overflow of which plaintiffs complain, then the plaintiffs cannot recover in this case, and the jury will find for the defendant." And the court refused to give the converse proposition for the plaintiffs, expressed in the following charge, which was refused to the plaintiffs: "The court charges the jury, for the plaintiffs, that it

was the duty of the defendant city upon being notified of the condition of the sewer or manhole in controversy, if they shall find same insufficient, to have rectified or remedied the evil complained of, and the failure to do so makes the defendant liable, and the jury will find for the plaintiffs."

The facts, we think, plainly show that, although Meyer had the cross-pipe constructed as a sanitary pipe from his residence (afterwards sold to appellants) to the main sewer pipe of the city under Thirty-third avenue, nevertheless the city, certainly with full knowledge that it did cross through the manhole— not emptying into the manhole, however—and did so cross the manhole as to be opposite the outlet pipe, assumed control over the manhole and cross-pipe, and all connected with it, and knowing that this cross-pipe accumulated drift and other obstructive material, and thus prevented the proper flow of the surface water out through the outlet pipe, yet allowed this manifestly improper construction of the manhole and cross-pipe to remain unrectified, after full and repeated notice of the condition of affairs and request for repairing it. The principle is one abundantly supported by the authorities which we shall subjoin —that no matter who constructed the cross-pipe in the manhole, if the city assumed and exercised control over the manhole and the cross-pipe, and dealt with it as a part of its drainage system, the city is liable for any damages occasioned by such wrongful construction of the cross-pipe and the manhole, if it has been duly notified and fails to correct the situation. This is abundantly settled by the following authorities: *Emery* v. *City of Lowell,* 104 Mass., 13; *Taylor* v. *City of Austin,* 32 Minn., 247, 20 N. W., 157; *Chalkley* v. *City of Richmond,* 88 Va., 402, 14 S. E., 339, 29 Am. St. Rep., 730; *Schroeder* v. *Baraboo,* 93 Wis., 95, 67 N. W., 27; *Senhenn* v. *City of Evansville,* 40 N. E., 69, 140 Ind., 675,—all cited by counsel for appellant, and especially by the very recent case, not cited by counsel on either side, of *Hiram L. Hart* v. *City of Neillsville,*

40 N. W., 699, from the Wisconsin supreme court, to be also found in 40 N. W., 699, 1 L. R. A. (N. S.), 952.

In the *Lowell case* it was held that if the city constructed and maintained a passage from the street down into a private drain from neighboring premises in such manner as in effect to adopt it—the passage—in connection with the drain as a common sewer, and by negligence in its construction or repair obstructed the drainage, it was liable. In the *Minnesota case* it was said: "It is not material to inquire when or by whom the sewer was originally constructed, as it is not disputed that the city had assumed control and management. It was, therefore, its duty to use reasonable diligence to keep it in proper repair." In the *Virginia case* it was said: "Where a person is permitted and aided by a city to alter the course of a sewer over which it has assumed control, it matters not by whom it was originally constructed, and when such alteration is negligently effected, so as to cause the water and filth to flow into the plaintiff's cellar, the city is liable." In *Senhenn* v. *City of Evansville, supra,* it was held, going further than necessary here, that a city, which allowed an obstruction to remain in a street for an unreasonable length of time, will be liable for injuries caused thereby to the same extent as if it had originally placed the obstruction in the street. And the case to which we last above referred (*Hart* v. *City of Neillsville*) is a very strongly reasoned case, fully supporting the appellant's contention. That court quoted the following, with approval, from 5 Thompson on Negligence, sec. 5876: "But, even if it were a good answer to make to the injured property owner that the city had made a mistake in its plan, yet it would not be so after the city had acquired a knowledge of the inadequacy of the plan and the injury inflicted thereby upon the property owner, since it would be its duty to abate the evil by changing its plan and rectifying its error." In that case the plaintiff had a basement walled up with stone, and he had a drain leading from his basement under the street in front of his property. The city constructed a sewer along

the street for the purpose of draining the abutting property, and left an opening in said sewer to enable plaintiff to connect therewith his private drain.    He did so, and his cellar was subsequently flooded, and it was objected that but for his private drain there would have been no damage; but the court held "that where, as a matter of right, a private drain is constructed, connecting private property with a main sewer through an opening left by the city therefor, the damages resulting to such property by accumulated sewage flowing from said sewer to said property are recoverable, and the mere circumstance that without such drain no such result would have happened will not save the municipality from liability for such damages."

It is not questioned by this record that the predecessor in title of the plaintiffs had the right to construct this sanitary pipe; and, even if it be conceded that he had no right to construct it through the manhole originally, yet if such sanitary pipe so crossed through the manhole is afterwards controlled by the city, in connection with the manhole, the city is as much responsible as if the cross-pipe had never existed. It was the plain duty of the city, after it was notified of the fact that the cross-pipe caught drift and filth, and so filled up the manhole in part, and obstructed most seriously the flow of the water through the eighteen-inch outlet pipe, to have that cross-pipe removed and the manhole properly reconstructed, so as to take off all the surface water flowing, in ordinary rains, into the manhole.    See, also, the following authorities, and especially the masterly note of Mr. Farnham to *Johnson v. White,* 26 R. I., 207, 58 Atl., 658, in 65 L. R. A., 250; *Aurora v. Reed,* 57 Ill., 29, 11 Am. Rep., 1; *Jeffersonville v. Myers,* 2 Ind. App., 532, 28 N. E., 999; *Powers v. Council Bluffs,* 50 Iowa, 197; *Hitchins v. Frostburg,* 68 Md., 100, 11 Atl., 826, 6 Am. St. Rep., 422; *Parker v. Nashua,* 59 N. H., 402; *Houston v. Bryan,* 2 Tex. Civ. App., 553, 22 S. W., 231.

It is abundantly shown by the testimony in the record that the overflow of water is most serious over the plaintiff's prem-

ises. The facts would indicate, as best we can gather them from the record, that there was originally a natural drainage through the plaintiffs' lot, and that that natural drainage, if it had been let alone, would have carried off all ordinary rainfalls. The city put in that drain piping, and it appears that that piping was not of capacity to carry off the ordinary rainfall. It the city substituted for the natural drainage, piping which was insufficient to carry off the usual rainfalls in ordinary rains, it would surely be liable, for the obvious reason that it would increase the overflow on the premises beyond what it would have been in its natural state. If the city undertook to substitute something for the drainage, it should have been a sufficient substitute, and adequate substitute. It is true that Mr. Meyer raised his house and filled up this ditch. It is also true that the city has diverted some of the surface water which in years past went through this manhole in front of the plaintiffs' property; but we think a fair view of the whole testimony makes it reasonably clear that the pipes connected with the manhole intended to carry off the surface water are inadequate, even as respects the present flow of surface water into the manhole. We would not, however, disturb the verdict under the very accurate instructions, save in one respect, on the ground that the testimony manifestly showed these pipes insufficient; but we are bound to hold the two instructions, above set out, given to the defendant, erroneously given, and the instruction, above set out, refused to the plaintiff, erroneously refused, because of the incorrect announcement of the law we have indicated above. It is for that reason alone that the judgment is reversed and the cause remanded.

We will add that we do not think the learned circuit judge erred in what he said in the hearing of the jury. It could not possibly have exercised any influence on them in the finding of their verdict. Indeed, it seems to have been made to cure what the circuit judge feared might have been some erroneous observations of his in the course of the trial—observations which he

thought might influence the jury prejudicially against the plaintiffs. We refer to the opinion we have this day delivered in the case of *Fed Gray* v. *State, ante,* p. —, s. c., 43 South., 289, as to this assignment of error.

*The judgment is reversed, and the cause remanded.*