CITY OF VICKSBURG *v.* PORTERFIELD.

(Division B. Jan. 16, 1933.)

[145 So. 355. No. 30317.]

R. M. Kelly, of Vicksburg, for appellant.

584

Thames & Thames, and **Brunini & Hirsch**, all of Vicks-
burg, for appellee.

586

Argued orally by **R. M. Kelly**, for appellant, and by **J. B. Brunini**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

This is an appeal by the city of Vicksburg from a judgment against it in favor of the appellee, who was plaintiff in the court below, for damages to appellee's property fronting on Walnut street in the city of Vicksburg. The appellee, Mrs. Porterfield, had owned the property so damaged since about 1899. The damage claimed was for permitting a drain sewer, constructed in the street under an embankment by which the water on the west side of the street was to be carried east through a highway embankment, to become entirely obstructed, and the rainfall to be impounded on the west side of the street to a considerable depth after each hard rain. This would gradually drain out through the pipe so constructed, but it required considerable time.

It does not appear when the street was laid out, or when the city constructed the fill under which the drain-pipe was placed. Witnesses testified that there had formerly been a bridge over the depression in the swale through which the water naturally ran from the west side of the street eastwardly; that at some time, none of the witnesses remembering distinctly as to the year, the fill was placed in the street between two hills so as to make the street more level. From time to time, the city had dirt, brickbats, and other material dumped on this embankment or fill, and that said material, or some of it, fell to the bottom of the embankment, or was

washed there by the rains, so that the mouth, or discharge portion, of the pipe was obstructed and covered up, and the intake of the drainpipe was filled with dirt, tin cans, and other debris. All this took a considerable period of time, but by 1927 it had become wholly inefficient as a drainpipe. In February, 1927, there was a hard rain of several hours' duration, and the water was impounded by the fill and rose into the houses of tenants of the plaintiff, Mrs. Porterfield, who thereupon complained to the city about this condition. The city made some examination, and discussed plans of relieving the situation, but it resulted in nothing.

The city contended that they made a proposition to cut a ditch on the east so as to drain the water, provided the plaintiff would relieve them from damages, and that she refused so to do. The city also claimed that a proposition to reconstruct the bridge at that point made by them was refused by the plaintiff, and that they could not satisfy her.

The plaintiff testified that she did not refuse to agree to anything, but that she insisted that the drain be cleared and the situation remedied, but that the city refused and neglected to do anything about it, and that her property was destroyed so far as its rental value was concerned, and was damaged physically by the water standing thereon and the consequent deterioration therefrom.

The city also contended that the tenants of the plaintiff had erected bulkheads of dirt on the property east of the drainpipe that caused it to be filled up; that the rainfall that year was unusually excessive, and that they were not bound to provide for unusual and excessive rainfalls. There was proof that the rainfall referred to was one of the hardest, if not the hardest, rains which had occurred in years. There was also testimony of other rains, prior to 1927, of an unusual nature and very excessive, and that the damage caused by rainfalls was

recurrent, and that, after each rain, water was impounded on the west side of the fill and stood for days, until it could seep through the obstructed drain.

The city also contended that the situation had existed so long that they had acquired a right, by prescription, to have the condition continued without liability on the city therefor.

As to the facts, the evidence is conflicting; but we think the proof is sufficient to sustain the finding of the jury for the plaintiff, both as to liability and as to damage. In fact, there is no contention that the verdict is excessive.

It is contended by the city that the court erred in giving Instruction No. 5 for the plaintiff, reading as follows: "The court instructs the jury that when the City of Vicksburg built said embankment and the drain thereunder, the law imposed upon it the duty to keep said drain open, free from obstruction, so as to take care of all of the water falling on plaintiff's property on the west side of South Walnut Street, and all water which flowed on to plaintiff's said property from the surrounding lots, along with whatever might be brought with the water, such as soil, to the said opening."

We do not think it was error to have given this instruction. There can be no doubt that the city was using Walnut street as a public street and had assumed control of it, and whether the city placed the fill and drain itself, or when it did, it was under duty to keep same in a condition to serve the purpose for which it was constructed.

We think there is no doubt, under the proof, that the city constructed the fill, but it is immaterial whether it did so construct it, or whether it accepted the street with the fill therein at the time.

It is argued that the city is not liable for the accumulated surface water resulting from excessive rainfall, or unusual rainfall.

We do not think this position is sound. The city, in changing a natural condition for drainage purposes, and in removing a bridge under which water formerly passed from the west to the east, should have provided for the escape of water which could have been done at a reasonable expense.

The rule is stated in the case of Arndt v. City of Cullman, 132 Ala. 540, 31 So. 478, 480, 90 Am. St. Rep. 922, as follows: "A municipal corporation, for the efficiency of its sewers, as has been held, is bound to make provision for such floods as may be reasonably expected, judging from such as have previously occurred, although at irregular and wide intervals of time, and is not liable for damages which could not have been provided for or guarded against by the exercise of ordinary diligence, such as unprecedented rains. 10 Am. & Eng. Enc. Law, 243; 13 Am. & Eng. Enc. Law, 714; 24 Am. & Eng. Enc. Law (1st Ed.) 948; [Columbus & W.] Ry. Co. v. Bridges, 86 Ala. 448, 449, 5 So. 864, 11 Am. St. Rep. 58."

The defendant requested and the court refused an instruction reading as follows: "The court instructs the jury that the city is not liable for insufficiency of its sewers or drains to carry off surplus water from an extraordinary rain or storm. Especially is this true where such drains or sewers are sufficient to meet all demands made upon them under ordinary conditions, and, therefore, if the jury believe from the evidence in this case that the sewer or drain to plaintiff's property was sufficient to carry off the waters from ordinary rains, but was not sufficient to carry off the waters from extraordinary rains, then, even though the jury should believe that plaintiff's property was damaged by reason of being overflowed from waters from extraordinary rains, still the jury must find for the defendant."

This instruction is erroneous for two reasons as applied to this case: First. It is not correct to say that the city is only duty bound to provide for ordinary rains

and not for extraordinary ones. There is a marked difference between extraordinary and unprecedented. As shown by the quotation from the Alabama court above, the city must provide for such rainfall as experience shows will probably fall, although such rainfalls as have occurred in the past have been unusual and excessive. What has happened within a limited period of time, although separated by a considerable period, must be assumed as liable to happen again, and such happening must be taken into consideration in preventing such flooded condition. In the second place, this principle is not applicable to the case at bar, because the city permitted its drain to be filled and obstructed to the extent that it was wholly inadequate to serve the purpose of drainage.

A city must exercise reasonable care in such cases. In Nesbitt v. City of Greenville, 69 Miss. 22, 10 So. 452, 30 Am. St. Rep. 521, it was held that though it may not appear that the obstruction was erected by permission of the municipality, it was liable if the obstruction was continued to exist after the municipality acquired knowledge of its existence. It was also held that, where an obstruction is created by the municipality, or permitted to be erected by another, it must take notice of such defects as ordinary care will discover.

We think the same principle would apply to a drain constructed by a city in a fill made by it in one of its streets. It is not sufficient that the drainage provided in the first instance is adequate. The city must maintain the efficiency of its drains. It is the common knowledge of all persons having experience in such matters that drains constructed on streets and highways have a tendency to become obstructed, and to fill in so as to obstruct the full capacity of the drainage provided. This situation must be kept in view and remedied from time to time so as to maintain adequate drainage in each case. See the cases of Whitfield v. Meridian, 66 Miss. 570, 6

So. 244, 4 L. R. A. 834, 14 Am. St. Rep. 596; Fewell v. City of Meridian, 90 Miss. 380, 43 So. 438, 9 L. R. A. (N. S.) 775.

We find no reversible error, and the judgment of the court below will be affirmed.

Affirmed.