INZER, Justice.
This is an appeal by the City of Pasca-goula from a judgment of the Circuit Court of Jackson County awarding R. C. Rayburn and his wife $6,000 for damages to their home due to the overflow of the drainage ditch near their home. We reverse and render.
R. C. Rayburn and his wife brought this suit against the City of Pascagoula seeking to recover for damages to their home and furnishings due to the alleged negligence of the city in failing to properly maintain a drainage ditch near their home. It was charged that the city had allowed the ditch to become obstructed with weeds, logs, and other debris and that although the Ray-burns had complained to the city about the condition, the city either ignored their complaints or performed only minimal work which was not sufficient to properly maintain the ditch. The suit further charged that on May 7, 1972, the drainage ditch overflowed, and their home received about fourteen inches of water damaging their house and furnishings. It was charged that the damage resulted from the failure of the city to use ordinary and reasonable care to maintain the ditch, and to remove any obstructions that an inspection would have revealed. It further charged that the city was negligent in approving land changes that increased the volume of water to be handled by the ditch, and that it was aware that this increased volume caused the ditch to overflow.
The city answered and admitted that the Rayburns did appear before the city council and complain relative to the ditch, but *380 denied that it ignored their complaints or took minimal action. It also denied that it failed to reasonably inspect the ditch and remove obstructions therefrom, or that it failed to use reasonable care to provide adequate drainage.
The city affirmatively plead that it was not negligent in the construction or maintenance of the drain and that the drain was constructed and maintained in the customary and usual accepted manner for municipalities in that area. It further charged that the overflow of the existing drainage ditch was brought about by the action of the elements in producing an unprecedented rainfall in the nature of a flash flood which the city could not reasonably foresee. It also alleged that it exercised reasonable and ordinary care in the maintenance of the ditch and had no knowledge of any obstructions in the ditch prior to the unprecedented rainfall.
A trial resulted in a jury verdict for the Rayburns in the amount of $8,000. On motion for a new trial, the trial court ordered a new trial unless a remittitur of $2,000 was entered. The remittitur was entered and a judgment was rendered for $6,000; hence this appeal by the city.
The principal error assigned is that the trial court erred in refusing to grant the request of the city for a peremptory instruction at the close of all the evidence or in failing to grant a new trial because the verdict of the jury was contrary to the overwhelming weight of the evidence.
The evidence established that Mr. and Mrs. Rayburn acquired their home on Tu-pelo Avenue in the City of Pascagoula in February 1969. The house had been built about three years before they bought it. Tupelo Avenue runs generally in an east-west direction and is a cul-de-sac on the west side of Hospital Road. There are three houses on the north side of the avenue and one on the south side. The Ray-burns live in the middle house on the north side of the avenue. At the end of the avenue is a major drainage ditch which has been maintained by the City of Pascagoula for many years. The ditch is a natural drain and is some 8,500 to 9,000 feet in length, and runs generally in a southeastern direction from Highway 90 to the shores of the Mississippi Sound.
After the Rayburns purchased their home, they appeared before the city council on three occasions complaining that the city was not properly maintaining the drain as the debris in the ditch was obstructing the flow of the water and in times of heavy rain the ditch was overflowing and coming dangerously near to their home. They also complained to the city manager on other occasions. The last complaint made to the city council was in September 1971.
On Sunday night, May 7, 1972, the Ray-burns, as was their custom, retired about 6:30 p.m. and were awakened about 9:15 p.m. by a telephone call from their next door neighbor who asked if they had any water in their house. Upon arising they found that the water was about ankle deep on the floor of their bedroom. The water continued to rise until it reached the depth of about eight inches in the bedroom. The water remained in the house until the next day damaging the house and the furniture.
A few days after the water receded, Mr. Rayburn made an inspection of the drain and took pictures showing debris in the ditch at that time.
The evidence on behalf of the city established that after each complaint by the Rayburns the city caused the ditch to be inspected and any obstructions found therein to be removed.
After the last complaint in September 1971, the city caused the entire ditch to be cleaned from one end to the other. This work was completed in February 1972. After completion the ditch was inspected *381 from one end to the other and found to be clear and free of obstructions. After that time, the city received no further complaint relative to the condition of the ditch and had no knowledge of any obstruction in the ditch before the flood on May 7, 1972.
It is undisputed that 11.55 inches of rain fell in the city from midnight Saturday night until midnight Sunday May 7, 1972. It is also undisputed that 8.38 inches of rain fell in the two hour period between 8 :- 00 and 10:00 p.m. Mr. Kenneth Wilson, an engineer and flood specialist, testified on behalf of the city and he classified the 8.38 inches of rain in the two hour period as an unprecedented rain. Mr. Wilson made a study relative to the records of rainfall in the City of Pascagoula and found no record of a rainfall as heavy as the one in this two hour period. Based upon his experience and these records, he was of the opinion that the expectancy of such a rainfall in a two hour period would be in excess of 100 years.
Other witnesses testified that they had never seen as heavy a rainfall in Pasca-goula. It is undisputed that practically the entire city was flooded. Many homes were inundated and people had to be evacuated from them. Streets and bridges were washed out, and even telephone poles were seen floating down the street. To complicate the situation, the 8.38 inches of rainfall fell during a high tide which, of course, restricted the drainage of the water to some extent.
There is no doubt that the Ray-burns suffered damage to their home and its furnishings as a result of the overflow of the drainage ditch near their home. The question is was the city liable for such damages under the facts of this case. A city has the duty to use ordinary, reasonable care to maintain its drains. It also has the duty to remove any obstructions from the drains within a reasonable time after it has notice, either actual or constructive, of the obstruction. This duty exists whether the debris causing the obstruction is placed in the drain by someone other than a city employee. Thus, where it is shown that the city has notice that obstructions are accumulating in a drain, the city has the duty to use reasonable care under the circumstances to prevent flood damage which may result from its failure to properly maintain such drain. The city is required to make provisions for and guard against such floods as may be reasonably expected. This expectancy is to be judged from such floods as have previously occurred. However, the city is not liable for damages which could not be guarded against by the exercise of reasonable care, such as unprecedented rain. City of Vicksburg v. Porterfield, 164 Miss. 581, 145 So. 355 (1933).
The only testimony that tended in any way to contradict the fact that the rainfall in question was unprecedented was the testimony of the Rayburns and the witness Henry Thompson. Mr. and Mrs. Rayburn testified that they had seen other rainfall in the City of Pascagoula as heavy as that which fell on this occasion. However, both admitted that they were asleep until after nine o’clock and from that time on they were busy trying to get their furniture up out of the water. Their testimony revealed that they had little or no opportunity to observe the rainfall during the two hour period. Mr. Thompson, a neighbor of the Rayburns, testified that he remembered a rainfall in 1966 or 1967 that he thought was as heavy as the one on May 7, 1972. However, he admitted after the rainfall on May 7 everyone was speaking of it as being a record rainfall and unprecedented in that area.
The evidence is also overwhelming that after each complaint by the Rayburns the city took action on the complaint. After the complaint in September 1971, the city *382 caused the ditch in question to be cleaned from one end to the other. The work was completed in February 1972 and at that time the ditch was inspected and free of debris. After that time the city received no complaint relative to the ditch until after the flood on May 7, 1972.
The record in this case clearly establishes that this is not a case where the city has neglected its drainage ditches. It has a full time crew of eight to ten men who work full-time on drainage. It also has standby, crews who assist when problems develop. In addition, after every heavy rainfall, a crew goes around the city, inspects the ditches and removes debris to keep the water flowing in the drain. The record is also clear that the city had no knowledge or notice of any obstruction in the ditch in question prior to the rainfall on May 7, 1972.
After a careful review of the evidence in this case, we are of the opinion that the trial court was in error in refusing to grant the peremptory instruction requested by the city at the close of all the testimony. It is clear that the rainfall on this occasion was unprecedented. The testimony tending to refute this fact has very little, if any, probative value, and at the most amounts to a mere scintilla. To hold the city liable under the facts of this case would simply make the city an insurer of damage caused by flood water.
For the reasons stated, this case is reversed and judgment entered here in favor of the city.
Reversed and rendered.
GILLESPIE, C. J., RODGERS, P. J., and SMITH, ROBERTSON, SUGG and BROOM, JJ., concur.