The Town of Rensselaer v. Leopold.

Filed March 24, 1886.

No. 12,356.

## THE TOWN OF RENSSELAER v. LEOPOLD.

TOWN.—*Eminent Domain.*—*Public Use.*—*Right of Lot-Owner in Street.*—*Compensation.*—The owner of a lot abutting upon the street of a town has a property right in the street as it exists, which can not be appropriated and taken from him against his consent, without compensation; but, in the exercise of the power of eminent domain, it may be taken for a public use by due process of law.

SAME.—*Discretion of Municipal Body.*—Unless it is apparent at first blush that the proposed use is not public, courts can not interfere with the discretion confided to a municipal body, in doing that which the statute expressly authorizes.

SAME.—*Power to Narrow Street.*—The board of trustees of an incorporated town in this State have, upon the conditions imposed by the statutes, power to narrow a street, and property appropriated in making such improvement is for a public use.

SAME.—*Consent of Lot-Owners.*—The statute requiring the written consent
of a lot-owner to the vacation of a street in front of his lot, has no ap-
plication to an improvement by narrowing or altering it.

SAME.—*Benefits and Damages.*—Where the report of the commissioners ap-
pointed by the board of trustees to assess benefits and damages is silent
as to the value of the right in question, and resulting damages, it will
be presumed that the commissioners considered them as nothing.

SAME.—*Notice.*—*Jurisdictional Fact.*—The finding of the board of trustees
that due notice of the proceeding for the improvement has been given to
a property-owner, is conclusive against others who were properly served.

From the Jasper Circuit Court.

*E. P. Hammond* and *S. P. Thompson*, for appellant.

*W. D. Wallace* and *M. F. Chilcote*, for appellee.

MITCHELL, J.—On the 18th day of September, 1883, the
requisite number of resident freeholders of the town of Rens-
selaer presented to the town board of trustees a petition, ask-
ing that Van Rensselaer street, between Work and Susan
streets, be narrowed from the width of seventy-five to sixty-
nine and one-half feet.

Such proceedings were taken as that, on the 26th day of
October, 1883, an order was made by the board narrowing
the street according to the prayer of the petition.

It may be inferred that an appeal was taken from this or-
der, pursuant to the provisions of section 3372, R. S. 1881,
although this is not directly shown in the transcript which
was filed in the court below. As, however, both parties pro-
ceeded upon the assumption that an appeal was duly taken,
we will without further examination in that respect regard the
proceeding as having come properly under the jurisdiction
of the circuit court.

In the court below, a demurrer was sustained to the tran-
script of the proceedings, had before the board of trustees,
which was treated as a complaint. The ruling of the court
in sustaining this demurrer is assigned for error.

The proceedings are assailed upon two grounds. Assum-
ing in one aspect of the case, that they have been regularly
taken, the objector nevertheless contends that the abutting

The Town of Rensselaer v. Leopold.

owner of a lot has a private right in the street appurtenant to his lot, which he holds by an implied covenant that the street in front of his lot shall forever be kept open to its full width.  Practically, his insistence is that a street can not be narrowed without the written consent of the abutting lot-owners.  The conclusion of the appellee's argument at this point is, substantially, as stated by counsel, that the owners of lots in a town have a vested property right in the street upon which their lots abut, of which they can not be deprived without their consent, or without being awarded compensation for the property or right of which they are deprived.  The conclusion, thus stated, may well be conceded. It may follow nevertheless, that a street may lawfully be improved by being narrowed according to the provisions of the statute, without the abutting lot-owner's consent, due compensation first having been made for any damage which he may sustain.

That the owners of lots abutting on a street have a peculiar and distinct interest in the easement in the street, is a well established doctrine of law.  This interest is distinguished from the rights of the general public, in that it becomes an interest legally adhering to the contiguous grounds and the buildings thereon, by affording more convenient facilities for their use.  This incorporeal right appendant, the advantage of the street to the lot of the owner, and to the buildings, improvements, walks, trees, etc., as the owner may have adjusted them to the street as existing, is a valuable property right which the law recognizes.  This right can not be appropriated and taken from him against his consent, without compensation.  *Common Council, etc.*, v. *Croas*, 7 Ind. 9; *Haynes* v. *Thomas*, 7 Ind. 38; *Tate* v. *Ohio, etc., R. R. Co.*, 7 Ind. 479; *Protzman* v. *Indianapolis, etc., R. R. Co.*, 9 Ind. 467; *State* v. *Berdetta*, 73 Ind. 185 (38 Am. R. 117); *City of Indianapolis* v. *Kingsbury*, 101 Ind. 200 (51 Am. R. 749); *Crawford* v. *Village of Delaware*, 7 Ohio St. 459; *Street Railway* v. *Cumminsville*, 14 Ohio St. 523.

.Without express authority to that.end, the municipality can not release or discharge the right of the public in the streets, or apply any part of a street to a purpose different from the use to which it was dedicated. But when properly authorized, the public servitude may be discharged, while the private right or special property of the abutting lot-owner may be appropriated upon condition that due compensation is made.

This peculiar right of the abutting lot-owner may, like any other private property, be made subject to the power of eminent domain, and, in the exercise of that power, may be taken for a public use by due process of law.

It is said, however, that narrowing the street, whereby a· strip five and a half feet in width off one side is abandoned to the adjoining property-owners, is not a public use; that this is nothing more than an indirect method of transferring part of the public street to private use.

While it is true, courts can not be precluded from an inquiry into the character of the use for which property is proposed to be condemned, yet the presumption is in favor of the public character of a use which is declared to be public by the Legislature. Unless it is apparent at first blush that the proposed use is not public, courts can not interfere with the discretion confided to a municipal body, in doing that which the statute expressly authorizes. Mills Eminent Domain, section 10, and authorities cited.

The Legislature, sections 3367, 3368, R. S. 1881, has confided to boards of trustees of incorporated towns plenary power over the streets. Such boards are authorized to " lay out, survey, and open new streets and alleys, and straighten, narrow, widen, grade, and gravel," etc., those already laid out. The means for ascertaining the amount of damages which will be sustained by persons whose property is appropriated by any of the improvements specified, are also provided.

This amounts to a legislative declaration that any or all of the specified improvements are of a public character, and that

property appropriated in making such improvements is appropriated for a public use.

It does not affect the character of the improvement that, as a consequence of the extinguishment of the easement which the public has, and the appropriation of the private and distinct right of property which belongs to the abutting lot-owner in the strip of ground which it is proposed to abandon, the complete title to the abandoned strip is thereby vested in the respective lot-owners.

This is a mere incident to, or result which flows from, the improvement of the street. The narrowing of the street, it must be assumed, was ordered by the municipal authorities to subserve the public interest. Many reasons may have been apparent to the board of trustees why the public good required it.

The only other inquiry pertinent in this connection is, has the law provided a means for compensating the owners of lots who have a special property in the streets on which their property is situate, for the damage which the proposed improvement will impose upon them?

It only requires an examination of the sections of the statute already referred to, and those following in the same connection, in order to determine this inquiry in the affirmative.

The organization of a commission is provided for, upon whom the duty is cast of appraising and assessing the damages and benefits accruing to the owners of any land or lot through which any street is proposed to be constructed or altered.

Provision is made for the meeting of the commission, also for giving notice of such meeting to all whose rights are supposed to be affected by the proposed improvement, and for a hearing before the commission. An appeal to the circuit court is provided, and may be taken by any person owning land who is aggrieved by the report of the commission.

Thus it results that the narrowing of a street is the exer-

cise of the power to appropriate the peculiar and distinct property right of the lot-owners in the street which it is proposed to narrow, to a public use, upon the condition of making such compensation to the respective lot-owners as may be assessed, in the manner provided by law. We can perceive no greater impediment in the way of appropriating property of that description than of any other, express statutory authority to that end having been enacted, and an adequate method having been expressly provided for ascertaining the compensation to be made.

That the commission may have determined in this instance that the damages of the objector were more than compensated by benefits, does not militate against the power. If in that respect he has been aggrieved, it must be assumed upon appeal, the right of the case will be reached by an award of such damages, above benefits, if any shall accrue to him, as will compensate him for the injury to his property. If it is ascertained that his benefits exceed his damages, he has, in legal contemplation, no right to complain. The statute recognizes the property right of the abutting lot-owner in the street, and so far as the proposed improvement may directly affect his lot, or the improvements on it, and such as were rightfully and lawfully made in the street contiguous to it, he is entitled to be compensated for.

If property has been adjusted to a street as laid out, so that, by the proposed improvement, it is rendered less easy of access, or otherwise directly injured by reason of the fact that new arrangements and adjustments are made necessary, in order that the property may be as conveniently enjoyed as before, these constitute elements differing from the damage or inconvenience which the general public experiences, which should be considered in estimating the compensation to be made. *Protzman* v. *Indianapolis, etc., R. R. Co.*, 9 Ind. 467; *Smith* v. *City of Boston*, 7 Cush. 254; *Rigney* v. *City of Chicago*, 102 Ill. 64.

We are thus led to the conclusion that narrowing a street,

in pursuance of the conditions imposed by the statutes referred to, is a lawful exercise of the authority vested in town boards, and that the statute requiring the written consent of a lot-owner to the vacation of a street in front of his lot has no application to an improvement by narrowing or altering it.

The proceedings are next assailed on the ground of irregularity. It is first contended in that connection, that the commissioners appointed by the board of trustees to assess benefits and damages failed to estimate the value of the land or property to be appropriated, as required by section 3369, R. S. 1881.

The report of the commissioners, in that respect, shows by a recital therein, that the commissioners proceeded to ascertain by an inspection, and by hearing evidence, what real estate would be benefited by reason of the narrowing of the street, and then to ascertain what real estate would be damaged by narrowing the street. The report then proceeds to state the amount of benefits and damages assessed to each separate tract or parcel of land supposed to be affected by the proposed narrowing of the street, which is described. Each tract of land is specifically described in the report, and the name of the owner given. The amount of benefits to each tract is found in one column opposite the description and name of the owner in a column entitled "Benefits," another column, entitled "Damages," being in each case left blank. We think this substantially conforms to section 3369. The value of the property to be appropriated must be supposed to be represented by the column entitled "Damages." This column, having been in each case left blank, indicates with certainty that, in the estimation of the commissioners, the value of the land to be appropriated or property right annexed to each lot was in each instance considered as nothing, and that the proportion of damages in each case was, therefore, nothing; while it also indicates that the

proportion of benefits to each tract is the sum set opposite in the column entitled " Benefits."

It is argued that because the report of the commissioners is silent upon the subject of the value of each lot-owner's incorporeal right in the five and one-half foot strip in the street, it is, therefore, apparent that his right in the strip was not estimated or recognized. This is not apparent from the report. If, however, it did appear that the commissioners misjudged the extent and value of the property-owners' right in the street, it must nevertheless be assumed, the proceedings being otherwise regular, that their rights will be correctly apprehended and properly protected by the court to which the appeal was taken, and where the question of damages is peculiarly the subject of investigation.

It is next contended that it does not appear from the proceedings that the property was taken for a public use ; that it may be inferred from the record that it was taken for the private advantage of the lot-owners.

It appears from the record of the board of trustees, that at the time the petition was filed, asking for the street improvement, the board heard evidence, and, after being duly advised, found that the petition was duly signed, and that public convenience required the narrowing of the street as prayed for.

Even in the absence of such finding, as we have already intimated, since the narrowing of a street, in contemplation of law, is a matter of public concern, it must be assumed by the courts that the work entered upon in this instance was deemed to be for the public benefit. It may be doubted, although we decide nothing upon the point, whether the motives which induced the board of trustees to act could become the subject of inquiry in this proceeding.

It is contended lastly, that the demurrer to the complaint was properly sustained, because it appears in the transcript that *Jasper county* was the owner of property to be affected by narrowing the street, and because it further appears that the county was not notified of the proceeding.

In the list of property which it is alleged will be affected by the improvement prayed for, occurs the following : " Public square, Jasper county." What the property is, or in what manner it will be affected, is left to inference. From the proof of notice set out in the record, it appears that notice was personally served on " John W. Powell, sheriff of Jasper county, in charge of the public property of said county."

The statute regulating the giving of notice in such cases, section 3368, enacts that " notice shall be given by personal service, or by leaving the same with  * * *  the owners or agents of lots or lands upon or through which the public improvement or street or alley is proposed to be made."

The county has made no objection, and is not now making objection, to the notice thus served. Whether the land-owners were properly served with notice, was a jurisdictional fact which the board of trustees were required to determine. A notice having been served apparently in conformity with the statute, and the board having, as their record affirmatively shows by a recital therein, determined that the notice thus set out was due notice to the county, their finding is conclusive, at least against others who were properly served. *Porter* v. *Stout*, 73 Ind. 3 ; *Grimes* v. *Coe*, 102 Ind. 406.

If there were any other objections to the proceedings they have not been pointed out, and must be deemed to have been waived. Those relied on do not seem to us to have been well taken. It was therefore error to sustain a demurrer to the complaint.

The judgment is reversed, with costs, with directions to the court below to overrule the demurrer to the complaint, and for further proceedings not inconsistent with this opinion.

Filed March 25, 1886.