No. 137.

## THE CITY OF JEFFERSONVILLE v. MYERS ET AL.

MUNICIPAL CORPORATION.—*Street Improvements.*—*Consequential Damages.*—*Negligence.*—*Liability to Property-Owner.*—A city is not liable for consequential damages caused by an original grading and improvement of its streets, unless the work be negligently performed, in which case it is liable for the injury caused by its negligence.

SAME.—*Change of Grade.*—*Property-Owner.*—*When May Recover Damages.*—*Section 3073, R. S. 1881, Construed.*—Under section 3073, R. S. 1881, an owner of a lot abutting upon a street who sustains special injury from a change in the grade of the street, has a right of action for damages where they have not been assessed and paid, or tendered. The municipal authorities have discretionary power to determine when a change is necessary, but the power to cause a change is subject to the provisions of said section.

SAME.—*Negligence in Work.*—*Damages.*—*Property-Owner May Recover.*—Though the consequential damages accruing from a change of grade be first assessed and paid, an action will lie in behalf of the owner of abutting property for injury resulting from negligence in the performance of the work as well as in the case of an original establishment of grade and construction of an improvement of the street; and, in an action for damages arising out of an unlawful change of grade, all damages actually suffered by the adjoining proprietor may be recovered, though they arise in part by reason of the negligent performance of the work.

SAME.—*Action Against City and Others.*—*Complaint.*—*Sufficiency of.*—*Instruction to Jury.*—In an action against a municipality and others for damages for injury to property of the plaintiffs alleged to have resulted from the building of an embankment, which raised the established grade of the street, the complaint alleged that the defendants wrongfully and unlawfully constructed, and caused to be constructed, the embankment, etc.

*Held*, that the above allegation was sufficient to charge the city with liability, and that it was not necessary to aver that the alleged wrongful action of the city was authorized by its common council.

*Held*, also, that an instruction to the jury that the verdict might be against the city alone or against the other defendants alone, if the evidence should so warrant, was proper.

SAME.—*Abutting Owner's Consent.*—*Recovery of Damages Notwithstanding Waiver of Objection.*—*Measure of Damages.*—In such an action, the plaintiffs could not recover damages if they consented to the raising of the grade of the street, unless the damages grew out of the unskilful man-

ner of doing the work, and not on account of raising the grade. If the plaintiffs were induced to waive objection to the progress of the work on the condition that certain expenditures should be made in building walls and otherwise doing the work in a specific manner, and the work was not done as promised, the measure of damages would be the damage sustained on account of the work not being done as promised.

From the Clark Circuit Court.

*M. Z. Stannard* and *F. B. Burke,* for appellant.

*J. K. Marsh,* for appellee.

BLACK, J.—The appellees, Charles H. Myers and Peter F. Myers, sued the appellant and Michael Nolan and Joseph Coyne. Issues were formed, which were tried by a jury, the verdict being in favor of defendants Nolan and Coyne, for their costs and against appellant, for six hundred dollars.

The first question presented here relates to the action of the court in overruling the appellant's demurrer to the complaint, in which it was alleged, in substance, that the appellees at the commencement of the action, in December, 1886, were, and for sixteen years prior thereto had been, the owners in fee simple and in possession of two certain lots, described, in the city of Jeffersonville, which lots abut upon a public street of said city, named Market street, of the width of sixty feet, the grade of which street was duly and legally established by the proper city authorities of said city, on the 10th of July, 1870; that after the grade of said street was so established where said lots abut the same, and before the wrongful acts and doings of the defendants hereinafter set forth, the appellees from time to time made lasting and valuable improvements on said lots, consisting of houses, out-houses, fences and sidewalks constructed and shade trees planted, all with a view to said established grade of said street and in accordance therewith; that on the 20th of September, 1885, the defendants wrongfully and unlawfully constructed, and caused to be constructed, an embankment of earth, stone and gravel in, upon and along that

portion of said street, and the full width thereof, including sidewalk in front of said lots and upon which the same abut, and to the full width, seventy-three feet, of said lots, said embankment varying in height from three to twenty feet above the established grade of said street; that, in putting and constructing said embankment as aforesaid, defendants wrongfully and unlawfully tore up and destroyed the sidewalk and fences theretofore constructed by the appellees upon said lots adjoining the same, and so filled and piled up the earth, gravel, stone and brick about the shade trees theretofore planted along said sidewalk by appellees, as to greatly injure all and destroy and kill four of said trees; that before said embankment was so constructed said lots were on a level, or nearly so, with the established grade of said street, and the egress from and ingress to said lots were free, easy, convenient and unobstructed, and said lots were shapely, attractive and desirable, and the drainage thereof was good; but by said embankment, constructed as aforesaid, and varying in height from three to twenty feet above the level of said lots, egress therefrom and ingress thereto are materially and seriously obstructed, and the use, enjoyment and possession of said lots are greatly interfered with and lessened, and the value thereof is seriously impaired; that in order to go into and come out of said lots on said street, it is necessary to ascend and descend said embankment at great and constant inconvenience and annoyance; that said embankment seriously interferes with and obstructs the drainage of said lots and causes the waters to gather and stand in said lots to their injury and to the depreciation of their value; that said embankment mars and ill shapes said lots and militates against the salability thereof and greatly damages the same; that, by reason of the wrongful acts of the defendants, as herein set forth, the appellees have sustained damages in the sum of two thousand dollars, which damages are due and wholly unpaid. Wherefore, etc.

It is contended, on behalf of the appellant, that the complaint is defective because of the want of an allegation that the alleged wrongful action of the city was authorized by its common council.

We think this objection, which is the only one urged against the complaint, is not well taken. It is alleged that the defendants wrongfully and· unlawfully constructed, and caused to be constructed, the embankment, etc.

This, we think, was sufficient to withstand the city's demurrer for want of sufficient facts.

It is next contended that the court erred in overruling the appellant's motion for a new trial, and the appellant insists that the verdict was not sustained by sufficient evidence, and that the court erred in its instructions numbered five, seven, and ten.

The evidence showed that the appellees jointly owned and occupied the two lots, as alleged in the complaint, abutting upon the north side of Market street; the establishment of the grade of that street, and the making of improvements on the lots subsequent to the establishment of the grade, as alleged. Concerning the subsequent change in the grade, the evidence showed that in October, 1884, the city of Jeffersonville, by ordinance of its common council, granted to the United States, " for the purpose of erecting, building, constructing, and perpetually maintaining a levee at said city, for the improvement of the navigation of the Ohio river, and the protection of the government property thereat, and the approaches thereto, a right of way over " certain streets, alleys, and grounds of said city. The course of the levee described in the ordinance crossed said Market street about seventy-two feet east of the east line of the lots in question. In May, 1885, a contract was made between officers of the corps of engineers of the United States army, on behalf of the United States, and the defendant Joseph Coyne, for the construction of the levee, which was stated in the contract to be for the purpose of protecting the approaches to the

The City of Jeffersonville *v.* Myers *et al.*

government depot from inundation during floods.  The contract provided, among other things, that " wherever the route of the levee crosses an improved street, the gutters, curbing, pavements, and carriage-ways will be taken up to such a distance on each side of the line of the levee as will be necessary to secure to these streets, upon being reconstructed, a uniform grade, or slope, to the top of the levee of not more than five per cent.  In no case, however, will this distance be less than twenty feet measured from the nearest edge of the top. These ramps will be built simultaneously with the adjacent levee."

The contract also provided for the resetting of the curbing, and the reconstruction of the gutters, sidewalks and carriage-ways, and described the manner of doing the same.  The work was in the immediate charge of an engineer on behalf of the United States.

At the crossing of Market street the levee was made nine feet high.

The " ramp " or approach to the levee, on the west side thereof on Market street extended westward in front of the lots of the appellees for the entire width of the street, the fill being confined by a retaining wall along the front of said lots, said wall being about five feet high at the east line of said lots, and gradually diminishing in height toward the west, being about eighteen inches in height at the west line of the lots.

The evidence of damage to the property occasioned by the change was abundant.  Before the fill was made the appellees consulted an attorney, and were advised by him that they could enjoin the work or wait till it was done and sue for damages.  Being also advised by him to see the city council and ascertain whether some compromise could not be made, they, with another owner of property which would be similarly affected, had a meeting called of the levee committee of the council.  At that meeting they met the United States engineer in charge of the work and said committee,

composed of members of the common council. There was a conflict in the testimony as to what occurred at this meeting, but there was evidence that said engineer stated that when the approach passed the east line of said lots it would only be eighteen inches in height when completed, and that he would build a stone wall in front to retain the dirt, and put in proper sewerage; also, that one of the appellees, representing both of them, thereupon said he was satisfied and would step out, and for said other property-owner to make his own arrangements; also, that said engineer at that meeting said he would only make the levee six feet high where it crosses Market street. After making this arrangement, no objection to the raising of the grade was made by the appellees to the city or any of its officers until the work was completed.

In the performance of the work the government put in a sewer to carry off the water, and some catch-basins and drain pipes were put in the lots. The catch-basins were put at the highest point in the yard, and the sewer was stopped up and would not work, so that water stood on the lots, which before the change ran off in the gutter. It was necessary to go up and down steps for egress from and ingress to the lots. Both of the appellees resided on the lots while the work was being done, and saw it progressing.

They both testified that they objected to the change; that they stated their objection to the contractor who did the work.

There was no assessment or payment of damages for the injury to said lots.

The instructions to the jury to which the appellant objects in argument were as follows:

"5. If plaintiffs gave their consent to the raising of the grade of the street, they can not recover damages, unless the damages grew out of the unskilful manner of doing the work and not on account of raising the grade.

"7. If plaintiffs were induced to waive objection to the

progress of the work on the condition that certain expenditures should be made in building walls and otherwise doing the work in a specific manner, and the work was not done as promised, the measure of damage would be the damage sustained on account of the work not being done as promised.

"10. If the jury find that the plaintiffs are entitled to a recovery, and that the city alone should pay the damages, the verdict may be against the city alone; or if the jury find that the recovery should be against the defendants Coyne and Nolan, and not against the city, the verdict may be to that effect."

In discussing the evidence it is said by counsel for the appellant that its defence was that it had nothing to do with the work, and that before the building of the ramp the engineer in charge, on behalf of the United States, procured the consent of the appellees to the construction thereof.

In the making of the approach in front of the property of the appellees, the established grade of Market street was changed.

A city is not liable for consequential damages caused by an original grading and improvement of its streets, unless the work be negligently performed, in which case it is liable for the injury caused by its negligence. *Davis* v. *City of Crawfordsville*, 119 Ind. 1, and cases there cited; *City of Valparaiso* v. *Adams*, 123 Ind. 250; *City of Wabash* v. *Alber*, 88 Ind. 428.

Our statute (section 3073, R. S. 1881) provides "That when the city authorities have once established the grade of any street or alley in the city, such grade shall not be changed until the damages occasioned by such change shall have been assessed and tendered to the parties injured or affected by such change."

Under this statute an owner of a lot abutting upon a street who sustains special injury from a change in the grade of the street, has a right of action for damages where they have not been assessed and paid or tendered. *City of Lafayette*

v. *Wortman,* 107 Ind. 404; *City of Lafayette* v. *Nagle,* 113 Ind. 425; *City of Anderson* v. *Bain,* 120 Ind. 254.

The municipal authorities have discretionary power to determine when a change of grade is necessary (*City of Kokomo* v. *Mahan,* 100 Ind. 242, and cases cited), but the power to cause a change is subject to the statutory provision quoted above.

Though the consequential damages accruing from a change of grade be first assessed and paid, an action will lie in behalf of the owner of abutting property for injury resulting from negligence in the performance of the work, as well as in the case of an original establishment of grade and construction of an improvement of the street; and, in an action for damages arising out of an unlawful change of grade, all damages actually suffered by the adjoining proprietor may be recovered, though they arise in part by reason of the negligent performance of the work. *City of Lafayette* v. *Wortman,* 107 Ind. 404 (408).

The approach to the levee was not necessary to the accomplishment of the professed purpose of protecting the government depot from inundation, but it was necessary for the accommodation of the public in passing along Market street where it was crossed by the levee. These ramps, or approaches, were manifestly contemplated and authorized by the city in granting the right of way for the levee. The common council must be regarded as having acted with intelligent appreciation of the subject-matter.

The city appears also to have exercised some authority, through the levee committee of the common council, in the regulation of the mode of construction of the approach.

The city caused a change of grade in the street though the work of construction was done by the United States.

The claim of the appellant that the appellees consented to the change is based upon what is alleged to have taken place at the meeting of the levee committee, and the failure of the appellees to object to the work done with their knowledge.

The testimony of the appellees as to what took place at that meeting does not show an unqualified consent. Upon being informed that the approach would be constructed in manner materially different from that in which it was constructed, they stated that they would withdraw their opposition.

This could not be regarded as an absolute waiver of all claim for damages without reference to the manner in which the work was done.

It follows, we think, from what we have said, that the appellant had no reason to complain of the fifth and seventh instructions.

That there might be in such an action a finding against the city and in favor of the other defendants, as suggested in the tenth instruction, there can be no question.

We find no available error in the record.

The judgment is affirmed.

