## CHICAGO, INDIANAPOLIS AND LOUISVILLE RAILWAY COMPANY *v.* JOHNSON ET AL.

[No. 6,842. Filed January 13, 1910.]

1. MUNICIPAL CORPORATIONS.—*Streets.—Grading.—Occupancy by Railroads.*—Cities have the right to establish grades for the streets thereof, and the occupancy of a street by a railroad company does not lessen nor affect such power. p. 167.

2. MUNICIPAL CORPORATIONS.—*Grading Streets.—Damages.*—Except by statute, cities are not liable for damages caused by the proper grading of streets. p. 167.

3. MUNICIPAL CORPORATIONS.—*Grading Streets.—Delegation of Power.—Railroads.*—Cities cannot delegate their power to establish street grades to railroad companies. p. 167.

4. RAILROADS.—*Changing Grades.—Damages.—Streets.—Cities.*— A railroad company that changes its grade to conform to a city ordinance, in the absence of negligence, is not liable to a frontager for damages to his lot. p. 168.

5. RAILROADS.—*Rights of Way.—Occupancy.—Presumptions.*—A railroad company that takes possession of a right of way of the full legal width will be conclusively presumed to have appropriated such land. p. 169.

6. RAILROADS.—*Occupancy of Streets.—Presumptions.—Easements.*—A railroad company which has occupied a certain portion of a street for more than twenty years obtains title to such portion, but its use is subservient to the use thereof as a street, and the city may require such company to straighten its track therein. p. 169.

7. MUNICIPAL CORPORATIONS.—*Streets.—Easements.—Railroads.*—Cities may grant to railroad companies the right to use the streets, but such grants do not prevent frontagers from recovering damages for the additional burdens imposed upon their lots. p. 170.

8. MUNICIPAL CORPORATIONS.—*Streets.—Highways.—Ownership of.*—The owner of a lot abutting on a highway owns to the middle of such highway. p. 170.

9. DAMAGES.—*Railroads.—Streets.—Frontagers.*—A railroad company that is compelled by a city to straighten its tracks in a street, requiring the track to be laid on the opposite side of the street from where it formerly lay, is liable in damages for the additional burden to the frontagers upon such side of the street. pp. 170, 171.

10. LIMITATION OF ACTIONS.—*Damages.—Railroads.*—Twenty years' use of a street by a railroad company bars a right of action by frontagers for damages. p. 171.

11. PLEADING.—*Complaint.—Verbal Niceties.*—Courts will not indulge in mere verbal quibbles in determining the substantial rights of parties. p. 172.

From Lawrence Circuit Court; *James B. Wilson,* Judge.

Action by Mary Johnson and others against the Chicago, Indianapolis and Louisville Railway Company. From a judgment for plaintiffs, defendant appeals. *Reversed.*

*E. C. Field, H. R. Kurrie, Brooks & Brooks,* for appellant.
*Henry P. Pearson, M. F. Dunn, Robert N. Palmer* and *M. B. Hottel,* for appellees.

ROBY, J.—Appellees were plaintiffs, and recovered judgment from which the appeal is taken. The circuit judge upon request made a special finding of facts and stated conclusions of law thereon. The appellant excepted to the conclusions, and unsuccessfully moved for a new trial. The

facts are conceded to be found in accordance with the evidence. They are to the effect that defendant is a duly organized corporation; that at the time the complaint was filed and for at least five years prior thereto, it had operated a steam railroad extending from Louisville, Kentucky, to Chicago, Illinois, and through the corporate limits of the city of Bedford, Lawrence county, Indiana, and along J street in said city; that said street is sixty feet wide, and its course is north and south; that the plaintiffs are the owners of a lot abutting on said street for a distance of 180 feet; that for many years prior to November, 1905, said railroad ran upon said street in front of said lot, which is on the east side thereof; that the track was wholly on the west of the center of said street, and did not touch "that portion of said real estate owned by plaintiffs in fee simple, to wit, the east half of said street;" that defendant never paid or offered to pay plaintiffs anything by way of damages or compensation for the occupancy or use of said street; that defendant, in November, 1905, without leave or license, payment or tender of damages to appellees, moved its track, ties, roadbed and rails thirteen feet east, whereby four feet of the same was placed on the east side of the center of said street, gradually bearing west, until at a distance of seventy-two feet it was again upon the west side thereof; that it lowered the grade two and one one-hundredths feet, said grade being reduced gradually toward the south to eight inches at the south end of plaintiffs' real estate; that plaintiffs had erected, long before, a large two-story frame residence on said real estate at a cost of $2,800; that the surface of said lot was considerably higher than the street; that there was an embankment west of the east side of the street, making a rounded approach of earth from near the track to the street line; that said embankment was from seven to ten feet at its extreme height; that there was a comparatively level space on top of said embankment in the street in front of plaintiffs' property, used for street purposes, and occupied,

prior to the change of track aforesaid, by a substantial sidewalk of stone flagging, running the whole length of plaintiff's lot, 180 feet, which walk cost and was worth $90; that for the protection of said bank, and to keep it from sliding, plaintiffs had planted shrubbery and blue grass thereon, which effected said purpose; that there was also a fence along the west side of said premises; that the lot was level and was covered with grass and flowers; that all of said improvements were made with reference to the conditions existing prior to the change of track aforesaid; that, by reason of the change of said track, the natural support of the ground adjacent to plaintiffs' lot was destroyed; that defendant excavated and took away the earth in said embankment, most of which belonged to plaintiffs, whereby the earth was caused to slip and wash away, injuring plaintiffs' buildings, more particularly the walks to said dwelling-house; that the sidewalk was washed away and destroyed; that the walls of said house were cracked and weakened, causing the plastering to fall off, cracking the flues, and increasing the vibration caused by the jar of the passing trains; that plaintiffs' lot was worth $4,000 before the change of said track. and street, and thereafter, because of the injury thereto, as set out, was worth $1,800; that the defendant's railroad was constructed in 1855; that during all the time prior to the change aforesaid it has been on the west side of the center of said street, and has never encroached on any part of the lot east of the center thereof; that the defendant appropriated the land occupied by its new roadbed without permission, without payment or tender of payment therefor, and over plaintiffs' objection, and that it has abandoned the strip of land formerly used by it; that the embankment between plaintiffs' lot and the railroad track was necessarily cut down to permit the relocation of said track; that the defendant built a concrete wall in front of plaintiffs' lot, from four to six feet high, two feet wide at the top and four to six feet wide at the base, at a cost of $1,164.95, which was all

built on the east side of J street on plaintiffs' land, without payment or compensation therefor; that it was erected for defendant's benefit, and to prevent the washing and slipping and sliding of said embankment down upon its roadbed; that since the construction of said wall said embankment has ceased to slip; that there was no public improvement of said street in front of plaintiffs' lot ordered by said city. It is further found that an ordinance of said city, passed February 21, 1905, established a grade for J street, including that part of the street west of plaintiff's lot; that the ordinance provided that the defendant should immediately proceed with the lowering of its track over that part of said street to conform to such grade; that the defendant was by said ordinance ordered and required to reduce the grade of its tracks until it conformed to said grade; that the city desired to improve J street by the construction of a vitrified pavement from the north line of Seventeenth street; that between said points there were many curves in appellant's track; that, in order to make and maintain said improvement, it was necessary that the track be straightened and its grade lowered; that in order to have this done said city and said defendant, on June 21, 1905, entered into a contract, by the terms of which defendant agreed to straighten its tracks between said points, conform to said grade, remove a switch-track which it had between Fourteenth and Fifteenth streets, and to construct a part of said improvement, making the change of track and grade at its own expense; that as a consideration for this change in the alignment of its tracks it was relieved from any assessment on account of said improvement; that on September 6, 1905, said city, by ordinance, gave to defendant permission, authority, power and right to move its roadbed and track on J street, as heretofore described; that the contract for said improvement was let and the work completed and accepted, and the defendant performed its contract as aforesaid; that the change of grade and the change of location of the track

were necessary to the making of said improvement by the city.

The regulation of the grade of its streets by a city is an exercise of police power, and such power is vested in the municipality by legislative enactment, either express 1. or necessarily implied. Express authority in that behalf is conferred upon cities in this State. §8696 Burns 1908, subd. 5, Acts 1905, p. 219, §93, §3542 Burns 1901, Acts 1891, p. 368. The circumstance that a railway occupies a part of a street, the grade of which the municipality desires to establish or change, does not take away the power possessed by it to regulate such grade. *State, ex rel.*, v. *Indianapolis Union R. Co.* (1903), 160 Ind. 45, 60 L. R. A. 831.

Appellant did that which the city had a right to require, and its relation to the lot owners will have to be determined in view of that fact. "Where a street is graded pursuant to legal authority and in a careful manner, the adjoining owners of lots have no right to compensation for consequential damages to their lots, unless expressly given by statute." *Snyder* v. *President, etc.* (1855), 6 Ind. 237, 241. See, also, *City of Valparaiso* v. *Adams* (1890), 123 Ind. 250; *Keehn* v. *McGillicuddy* (1896), 15 Ind. App. 580; *City of Jeffersonville* v. *Myers* (1891), 2 Ind. App. 532.

Appellant insists that in cutting down the natural surface of the street to an established grade it is no more liable for damages than the city itself would be. The fact that 3. the change was made without coercion on the part of the city does not militate against this position. It is the undoubted law that the city cannot delegate its authority to the railroad company. The council cannot authorize a railroad company to take or injure the property of a citizen. *Protzman* v. *Indianapolis, etc., R. Co.* (1856), 9 Ind. 467; *Egbert* v. *Lake Shore, etc., R. Co.* (1893), 6 Ind. App. 350, 68 Am. Dec. 650; *Indianapolis, etc., R. Co.* v. *State, ex rel.*

(1871), 37 Ind. 489. In the case of *Protzman* v. *Indianapolis, etc., R. Co., supra,* the railroad company elevated the grade of the street and put its track thereon. In the case of *Egbert* v. *Lake Shore, etc., R. Co., supra,* the railroad company, as a part of its general system of improving its roadbed, raised the grade along its right of way, making it necessary to fill in to make approaches for a street crossing, and interfering with the ingress to and the egress from the land of an adjoining owner. In the case of *Indianapolis, etc., R. Co.* v. *State, ex rel., supra,* the railway company was mandated to grade the streets referred to in the case of *Protzman* v. *Indianapolis, etc., R. Co., supra,* so as to enable the public to use them. The doctrine is of necessity limited in application to facts which show an attempt on the part of the company to do something for itself.

The reasoning applicable to the change of grades by a city does not therefore apply to a grant of power to a commercial railroad to change the grade and occupy the street 4. with its tracks, and wherever it fails to appear that the change of grade is made solely for the public accommodation the railroad making it must answer for the consequences. Where, however, as here, it is clearly shown that the grade was fixed by the city in order that it might pave and improve the street, and that the only interest of the railway was to adjust its tracks to meet the requirements of the municipality, the reason upon which it is held responsible for the consequences of making such grade does not apply. When the reason ceases, the rule ceases, and the partial occupancy of such street by appellant's tracks is no reason for placing the abutting owner in any different position from that which he would occupy were the street not used by the railway. It happens here that the actual work of grading was done by the railway company. It was, however, done in pursuance of a contract within the province of the parties to make. The responsibility of the company depends upon the purpose for which the work is done, not upon

who does it.  Of course for lack of care or skill the contractor, whoever he is, must answer to those damaged thereby, but this possible liability is not claimed herein.  It therefore seems to us that the appellant ought not to be held responsible for damages caused by the act of the city in fixing a grade and conforming the street thereto for its own convenience.

The second phase of the case arises from the location of appellant's tracks on appellees' land.  It contends that a railroad company is presumed to appropriate a right of way to the full width that it may take by law, and that it therefore holds a way in J street as wide as the street itself, having of course the right to lay its tracks on any part thereof.  The cases cited "decide, in effect, that where a railroad company enters upon land and takes possession of, and occupies a right of way of the full width authorized by law, or by its charter, no limitation upon its right to do so appearing, it will be conclusively presumed that it appropriated the land so accepted or taken possession of to the full width allowed by law." *Indianapolis, etc., R. Co.* v. *Reynolds* (1888), 116 Ind. 356, 360.

The finding shows an occupancy by appellant of so much of the street as was covered by its ties, and that it never occupied any part east of the center line.  Holding for more than twenty years raised the presumption of a grant. *Town of New Castle* v. *Lake Erie, etc., R. Co.* (1900), 155 Ind. 18.  Such presumption is confined to the land actually held. *Indianapolis, etc., R. Co.* v. *Reynolds, supra; McFadden* v. *Ross* (1890), 126 Ind. 344. While the municipality does not have power to remove a railroad track which has remained on the street for more than twenty years, its authority over the street and the manner of its use is no more impaired by the fact that a railroad company has a right to use it than such authority is impaired by the fact that other persons and corporations have a right to use it.  The findings show appellant's track

to have been so laid as to interfere with the general use of said street by the public. It was therefore a proper exercise of authority to require it to be straightened and put on the center line. §8696 Burns 1908, subd. 5, Acts 1905, p. 219, §93, *City of Noblesville* v. *Lake Erie, etc., R. Co.* (1891), 130 Ind. 1, 5; *Louisville, etc., R. Co.* v. *Phillips* (1887), 112 Ind. 59, 2 Am. St. 155; Elliott, Roads and Sts. (2d ed.), §807.

The city has the power to grant permission to a railroad company to build its track upon a street, and such power is presumed, from long-continued use, to have been ex-

7. ercised. Such permission is simply a grant of the right to share with the general public the use of the easement. It does not impair or destroy the right of an abutting owner to recover damages for the additional burden imposed upon his land. *Haslett* v. *New Albany, etc., R. Co.* (1893), 7 Ind. App. 603, 608; *Tate* v. *Ohio, etc., R. Co.* (1856), 7 Ind. 479; *Town of Rensselaer* v. *Leopold* (1886), 106 Ind. 29; *Burkam* v. *Ohio, etc., R. Co.* (1890), 122 Ind. 344; *City of Indianapolis* v. *Kingsbury* (1885), 101 Ind. 200, 51 Am. Rep. 749. See monographic note to *Louisville, etc., R. Co.* v. *Lellyett* (1905), 1 L. R. A. (N. S.) 49.

The owner of a lot abutting on a highway owns to the center of the street. *Cox* v. *Louisville, etc., R. Co.* (1874), 48 Ind. 178, 188; *Western Union Tel. Co.* v. *Krueger*

8. (1905), 36 Ind. App. 348; *Haslett* v. *New Albany, etc., R. Co., supra; Terre Haute, etc., R. Co.* v. *Rodel* (1883), 89 Ind. 128, 46 Am. Rep. 164. He may maintain an action against the railroad company for damages caused by the construction of a railroad along the street and over that part of the land owned by him. *Terre Haute, etc., R. Co.* v. *Rodel, supra; Protzman* v. *Indianapolis, etc., R. Co., supra.*

The application of the foregoing legal propositions to the facts of the case under consideration determines the relative rights of the parties. The appellant is lawfully upon

9. the street and has express authority from the city to lay its tracks over appellees' land. The appellees, on

the other hand, are entitled to recover such damages as the construction of such railroad has caused them. When the amount of such damage has been ascertained and paid, neither of said parties can have reason for complaint. The one will have been compensated for that given and the other will have paid for what it has received. The principles by which compensation must be made are well settled and often declared. *Evansville, etc., R. Co.* v. *Charlton* (1892), 6 Ind. App. 56.

The finding shows that the appellant had maintained its track on the opposite side of said street for such a length of time as to bar a claim for damages which might otherwise have been made against it on account of such occupancy. *Sherlock* v. *Louisville, etc., R. Co.* (1888), 115 Ind. 22.

This fact in nowise affects appellees' right to compensation for real estate now taken. It has been held that where a city granted a license for the use of a specified portion of the street, and appropriation proceedings were thereafter had, the landowner had a right to enjoin the construction of tracks outside of the limit fixed by said license and appropriation. *Chicago, etc., R. Co.* v. *Eisert* (1891), 127 Ind. 156; *O'Brien* v. *Central Iron, etc., Co.* (1902), 158 Ind. 218, 57 L. R. A. 508, 92 Am. St. 305.

The appellant's right in J street was limited to that portion thereof occupied by it, and has nothing to do with its appropriation of the appellees' fee. This would be true where compensation had in fact been made for that part of the street occupied, but appellant has not made compensation. It has not paid for what it has had. It has simply become entitled to the benefit of the statute of limitations; a statute of repose, the assertion of which implies no merit on the part of those availing themselves thereof. *Webb* v. *Rhodes* (1902), 28 Ind. App. 393.

It has voluntarily relinquished the right to invoke such statute. It was bound to know that the city had authority

over said street, and it impliedly undertook, from the beginning, to do what it has done—abide by and conform to all reasonable requirements which the city might make. If in so doing it foregoes the right to avail itself of the statute, the courts will no more intervene to avert the consequences of such waiver than they would intervene to prevent an honest debtor from making a new agreement to pay his barred debt. There has been some discussion as to the theory of the complaint. The construction of the pleading indicates pretty clearly that the principles of law applicable to the facts stated had not crystalized in the mind of the author, but it equally indicates a desire to recover all damages caused by the permanent location of the railroad on the appellees' land.

The objection to the form of the allegation—that appellees own the fee in the land east of the center of the street—rests upon a verbal quibble too nice for the purposes of substantial justice. The special finding shows the assessment of damages proceeds upon a consideration of facts which are in part not relevant thereto.

The judgment is reversed, with instructions to sustain appellant's motion for a new trial and for further proceedings not inconsistent herewith.