HAWAII HOUSING AUTHORITY, A PUBLIC BODY AND A BODY CORPORATE AND POLITIC, *v.* CHIYO AJIMINE, KIMIKO AJIMINE, MATSUKI-CHI AJIMINE, ROSE S. AJIMINE, TARUSUKE AJIMINE, CHOTARO AKAMINE, HATSUKO AKA-MINE, GEORGE C. AKAMINE, ANTONIO COSTA AMORINO, HENRY Y. AOKI, KIYO AOKI, KIYO-TO AOKI, ROBERT Y. AOKI, CRENCIA APUAN, FELICIANO APUAN, MARY APUAN, GUJI ARA-KAKI, ALSO KNOWN AS GUZU ARAKAKI, RUTH Y. ARAKAKI, SHIRLEY M. ARAKAKI, TAKEICHI ARAKAKI, TAKEJIRO ARAKAKI, TAKEMITSU ARAKAKI, TAKEZO ARAKAKI, TETSUO ARA-KAKI, TSURUKO ARAKAKI, WALTER H. ARA-KAKI, YOSHIO ARAKAKI, SHIGEO ARAKI, SHIZUE ARAKI, KOSU AWAKUNI, YASUO AWA-KUNI, BISHOP TRUST CO., LTD., AN HAWAIIAN CORPORATION AND JOHN HENRY M. MAGOON, SR., AS TRUSTEES UNDER THE WILL AND OF THE ESTATE OF JULIET C. MAGOON, DE-CEASED, ANTONIO D. CASTRO, TRUSTEE OF THE ESTATE OF GEORGE H. HOLT, DECEASED, HATSUE EGAMI, KUMATA EGAMI, MINORU EGAMI, MATSUE EGAMI, CATHERINE FER-NANDEZ, FRANCISCO FERNANDEZ, LYDIA

FREITAS, GEORGE FURTADO, EMMETT T. HIGA, JANE M. HIGA, ETHEL HIGASHI, ISU HIGASHI, NABI HIGASHI, YUEN HIN, JAMES A. V. HORSFALL, SUE S. AOKI HORSFALL, ELSIE M. INOUYE, RICHARD S. INOUYE, ELLEN HISAKO ISHIMINE, FLORENCE C. ISHIMINE, KOSHO ISHIMINE, HIDEKI ITAI, KAY K. ITAI, MARGIE T. ITAI, MICHIE ITAI, MARY ANN KALAN, GRACE KIKUYAMA, JUNICHI KOBASHIGAWA, MATSUE KOBASHIGAWA, CHIYO KOKI, FORMERLY KNOWN AS CHIYO AJIMINE, DOLORES KOKI, ETHEL KOKI, TOKUSO KOKI, FORMERLY KNOWN AS TARUSUKE AJIMINE, TOM KOKI, FRED R. KOTANI, KAMADO KOTANI, SYBIL M. KOTANI, FRANK LADERA, MAGOON BROS., LTD., AN HAWAIIAN CORPORATION, CHITSU NABESHIMA, GENTARO NABESHIMA, HENRY Y. NAKAHODO, MASAO NAKAHODO, SABURO NAKAHODO, SANRA NAKAHODO, UTO NAKAHODO, ALICE S. NAKAMA, DOROTHY H. NAKAMA, USHI NAKAMA, BETSY M. NAKAMOTO, FLORENCE F. NAKAMOTO, KOGEN NAKAMOTO, MATSUA NAKAMOTO, MATSUZU NAKAMOTO, SEITARO NAKAMOTO, YEIJIRO NAKAMOTO, EDNA Y. NAKAMURA, HELEN H. NAKAMURA, KAME NAKAMURA, KYOYEI NAKAMURA, LEATRICE T. NAKAMURA, MASHI NAKAMURA, SHOYEI NAKAMURA, MARY F. NEVES, HENRY R. OSHIRO, JANE Y. OSHIRO, KAMATO OSHIRO, NANCY M. OSHIRO, ROBERT T. OSHIRO, RYOYEI OSHIRO, TAKEHIRO OSHIRO, JANE S. OYAMA, NIZAEMON OYAMA, TADAO OYAMA, PIO PAGTOLINGAN, ROSEBELLE PAGTOLINGAN, TOSHIKO SAKIHARA, SANTIAGO SALON, FERDINAND J.

H. SCHNACK, ROBERT SOON, SOW SOON, EDDY SOUSA, DAVID TAMANAHA, FUMIKO TAMANAHA, AI TANOUYE, ETHEL K. TANOUYE, MASAICHI TANOUYE, MASAO TANOUYE, MINORU TANOUYE, MOJIU TANOUYE, TATSUHEI TANOUYE, TATSUO TANOUYE, WALLACE T. TANOUYE, WALTER K. TANOUYE, ROSE OLIVIERA TELLES, VINCENT PAUL TELLES, EISHIN TENGAN, ISAMU TENGAN, KAMA TENGAN, KENSUKE TENGAN, KIYOKO TENGAN, MORRIS Y. TENGAN, GLADYS T. UEHARA, ISAMU UEHARA, MASAICHI UMEDA, TATSUKO UMEDA, CALVIN VALENTINE, JANET ITAI VALENTINE, CLIFFORD M. YASUTOMI, VIOLET K. YASUTOMI, KAZUO YOSHIMURA, YOSHIE YOSHIMURA, JOHN DOE 1 TO JOHN DOE 550 INCLUSIVE, MARY ROE 1 TO MARY ROE 550 INCLUSIVE, DOE CORPORATION 1 TO DOE CORPORATION 550 INCLUSIVE, UNKNOWN OWNERS AND CLAIMANTS.

NO. 2906.

ARGUED SEPTEMBER 3, 1952.  DECIDED OCTOBER 15, 1952.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY LE BARON, J.

This is an interlocutory appeal (by way of a bill of exceptions) from a decision of the trial judge in eminent-domain proceedings resolving the issue of public use in the affirmative. That issue was raised in the court below by an answer of one of the respondents who owns a parcel of the area of land sought to be condemned. The answer denied that "clearance, replanning and reconstruction of this area [*i. e.,* one in which 'unsanitary and unsafe housing conditions exist'] and the provision [*i.e.,* 'providing'] of safe and sanitary dwelling accommodations for persons of low income are public uses and purposes for which

public money may be spent and private property acquired," as alleged in the petition in the language of a legislative finding and declaration. (See R. L. H. 1945, § 3501.)

It is pertinent at this juncture to note that such answer consists of a mere categorical denial that those particular uses and purposes are public in character and constitutes nothing more than an assertion that they are not public uses and purposes, without alleging facts to support either the denial or assertion. Nor does the answer dispute the factual composition of such uses and purposes as ones of slum clearance and of improvement of housing conditions for persons of low income, with respect to an overcrowded and congested area where unsanitary and unsafe living conditions exist, but only questions their public character as they are described by the petition in the language of the legislature declaring them to be public uses and purposes.

The issue of public use, so raised and framed, thus concerns only the character of certain well-defined uses and purposes as to whether it be public or private. That issue was "set for immediate trial, without a jury and without regard to position on the calendar," as provided by statute. (R. L. H. 1951, Act 12 amending R. L. H. 1945, c. 8, § 319, par. 7.) At the outset of trial on such issue as the sole issue, the trial judge took judicial notice of the legislative finding and declaration that the same uses and purposes as involved in the issue are public uses and purposes. (R. L. H. 1945, § 3501.) He further took judicial notice of the public character of the petitioner as a public body and agency of government created and organized solely to promote the general welfare, and without any motive or possibility of private gain in the acquisition of the area and in the employment of those uses and purposes as indicated by the provisions of section 3531 of the Revised Laws of Hawaii 1945. He then ruled in

effect that the facts so judicially noticed gave rise to presumptions in favor of the public character of the particular uses and purposes involved in the issue and sufficed as prima facie proof of public character until contradicted and overcome. Accordingly, he relieved the petitioner of the burden of going forward with evidence on the affirmative of the issue and gave the respondent full opportunity to adduce evidence on the negative. But the respondent, although requested by the trial judge to adduce evidence, refused to do so. Thereupon the trial judge rendered his oral decision, and subsequently his written decision, based on facts judicially noticed.

The specification of alleged errors does not challenge the correctness either of the decision of the trial judge or of the declaration of the legislature that the particular uses and purposes as involved in the issue are public uses and purposes. Nor does it question the existence or strength of the presumptions in favor of the public character of those uses as found to arise by the trial judge. But it does challenge the correctness of the ruling in shifting from the petitioner to the respondent the burden of going forward with evidence. That challenge presents the sole question meriting consideration on interlocutory appeal. It is whether the facts judicially noticed by the trial judge are sufficient as a matter of law to constitute a prima facie case of public character for the uses and purposes involved and to support a judicial determination in the affirmative of the issue of public use where, as here at the trial on that issue, those facts were not disputed and the presumption arising from them not contradicted or overcome.

The facts, judicially noticed, are briefly that the legislature has found and declared the same uses and purposes as those involved in the issue to be public uses and purposes for which the condemnation of private property is author-

ized, and that the character of the petitioner is public and its employment of those same uses and purposes so limited by statute that private profit accruing to anyone is precluded. The reasonable tendency of these facts to prove the public character rather than a private one for those uses and purposes is indicated by the strong presumptions arising from such facts in favor of such public character. That tendency is aided by common knowledge that slum clearance and improvement of overcrowded and congested living conditions, so as to eliminate unsanitary and unsafe housing accommodations and in their place to substitute sanitary and safe dwellings, promotes the public health, safety and welfare. Such facts, in the face of a bare denial of public character, affect the course of further inquiry as a matter of law.

The general rule is that "Primarily, the right to declare what shall be deemed a public use is vested in the legislature; and consequently, when the public nature of a use for which a taking has been authorized by law is disputed, the question as it presents itself to the courts is whether the legislature might reasonably have considered the use public, not whether the use is public." (18 Am. Jur. 675, § 46.) This rule rests on the presumption that a use is public if the legislature has declared it to be such. The strength of that presumption is gauged by the high regard which the courts have for a declaration of public use by the legislature as a decision of a co-ordinate department of the government on a matter within its knowledge and duty. Illustrative of such regard, all the authorities agree that legislative findings and declarations of public use are entitled to great weight. Moreover, a legislative finding and declaration that the particular uses, as here involved, are public is "entitled not only to respect but to a prima facie acceptance of its correctness." (*Dornan* v. *Phila. Housing Authority et al.*, 331 Pa. 209, 200 Atl.

834, 840.) Indeed, "where [as here] the Legislature declares a particular use to be a public use the presumption is in favor of this declaration, and will be binding upon the courts unless such use is clearly and palpably of a private character." (*West et al.* v. *Whitehead et al.,* 238 S. W. 976, 978 [Tex. Civ. App. 1922].) But that does not mean that either the decision of the legislature or the presumption is conclusive, for the issue of public use is a judicial question and one of law to be decided on the facts and circumstances of each particular case. Nevertheless, the great weight accorded to the legislative finding and the prima facie acceptance of its correctness, as well as the binding effect of the presumption, demonstrates that the courts will not lightly disturb such a finding and will not overrule it unless it is manifestly wrong. (See *Housing Authority of the City of Dallas, et al.,* v. *Higginbotham,* 143 S. W. [2d] 79 [Tex.], 130 A. L. R. 1053; *The Town of Rensselaer* v. *Leopold,* 106 Ind. 29, 5 N. E. 761, 763.)

Any contention in this case that the legislative finding and declaration is manifestly wrong or that the uses and purposes involved are clearly and palpably of a private character is negatived by the very description of those uses and purposes and by common knowledge of their public character, as well as by the fact that they have been uniformly recognized by courts of other jurisdictions, in substantially the same kind of cases as the one at bar, to be public uses for which the power of eminent domain may be exercised by housing authorities of comparable powers to those of petitioner. (See *Thomas* v. *Housing & Redevelopment Authority of Duluth,* 234 Minn. 221, 48 N. W. [2d] 175, 184, and *Housing Authority of the City of Dallas, et al.* v. *Higginbotham, supra,* for a collection of those cases.)

Under all the facts and circumstances of this case, it is apparent that the uses and purposes involved are public

in character rather than private and that the legislature did not act arbitrarily or unreasonably in so considering them. Nor did the respondent show or offer to show otherwise even though he had his day in court with full opportunity to be heard. The question as to the sufficiency of judicially noticed facts is answered in the affirmative.

Exceptions overruled.

*H. C. Shnack* (*F. Schnack* with him on the briefs) for respondent-appellant *Ferdinand J. H. Schnack.*

*W. M. Blatt,* Deputy Attorney General (also on the brief), for petitioner-appellee.