STIGALL et al. *v.* SHARKEY COUNTY.

In Banc. Sept. 26, 1949.

No. 37059 (42 So. (2d) 116)

John B. Gee, and Clements & Clements, for appellants.

Wright & Glazier, John S. Joor, Brunini, Brunini & Everett, for appellee.

**Roberds, J.**

The question for decision on this appeal is whether or not Sharkey County had jurisdiction of a certain road which was so constructed, as alleged in the bill, as to cause the overflow of the lands and damage to crops of complainants for the years of 1940, 1941 and 1942. The negligent and wrongful acts charged to the county were the filling up of an existing drainage canal and the construction of the road bed upon that fill, and also the placing under this road, where it crosses another drainage canal, of culverts too small to carry the water.

On the first hearing a demurrer was sustained to the bill. On appeal to this court the cause was reversed and remanded. 197 Miss. 307, 20 So. (2d) 664.

On the hearing on the merits much evidence was taken on the propositions (a) whether the county had control and jurisdiction of the road, (b) the amount of the damage, if any, caused by said alleged acts, and (c) whether such damage was the result of a continuing condition justifying the issuance of a mandatory injunction. The Chancellor found that complainants had failed to show that the county was responsible for the construction of the road, or had jurisdiction thereof, and pretermitted a finding on the last two questions. Therefore, on this appeal we pass only upon the correctness of the decision of the first question.

Is the proof sufficient to establish that the county had jurisdiction over this road?

On June 8, 1938, J. M. Stigall and his wife and L. M. Elliott, three of the original complainants herein, together with a number of other persons, being more than ten landowners and householders of Sharkey County, filed a petition with the board of supervisors of that county,

praying for the construction of a public road, setting out generally the starting point, terminus, width and general direction of the road, and offering to donate the right of way for that purpose, reciting that the public interest and convenience required the establishment and construction of the road. The petition complied in all respects with Section 6340, Miss. Code 1930, now Section 8314, Miss. Code 1942, which prescribes the manner and essentials for laying out and constructing public roads by the counties of the State. The petition asked the supervisors "to lay out and mark same, if found practicable."

On the same day the supervisors, by order on their minutes, recited the filing of the petition; that it was heard upon oral and documentary proof; found it was signed by more than ten freeholders; that all of the landowners over whose land the road would pass had signed the petition and had agreed to donate to the county the right of way for the road, and further found that "the interest and convenience of the public requires that said road" be laid out and constructed. It then appointed the members of the board from the second and fifth supervisors' district a committee "to view and examine the proposed road and that if they find the same a practicable route, they shall mark and lay out said road, and report their proceedings in writing to this Board."

At the July, 1938, meeting the committee filed with the Board its written report, reciting that the two members constituting the committee had viewed the proposed route and found the same a practicable route "and that the public interest and convenience requires that said road be laid out as prayed for in the petition, and we have therefore marked and laid out said road as directed". The order of the Board on this report ordered "that the foregoing report of the committee be received and spread on the minutes of this Board and that said above described road shall be declared a public road

and opened and worked as such''. Another order of the Board appears on the minutes adopted at said July meeting headed ''In re: Laying Out Public Road In the Fourth District of Sharkey County, Mississippi,'' recites that Clinkscales and Moore, the committee theretofore appointed to ''mark and lay out'' said described ''public road'', had filed their report with the Board. The report was ordered to be received and spread upon the minutes of the supervisors ''and that the following be declared a public road'', describing it as in the petition, the former orders of the board and the report of the committee.

No further order appears on the minutes with reference to the highway. The other facts, except as to pay of county employees who worked upon the road, must be deduced from oral evidence. That evidence is somewhat vague and indefinite, due largely, no doubt, to the fact that two of the complainants and the president of the board of supervisors, who was the most active member of the board as to this matter, had died before the case was heard upon the merits.

The road was constructed in the fall of 1939 and winter and spring of 1940. On behalf of the county there is evidence that the actual survey of and plans for construction of the road were prepared by an engineer of the State Highway Department and the gravel placed thereon was furnished by that Department. Mr. Davidson, the Highway engineer who testified in the case, said he did not know who actually constructed the road. On May 20, 1943, Mr. Davidson wrote a letter to one of the attorneys of counsel for the county in this cause in which he described the method of constructing this road in these words:

''The construction of this road was sponsored jointly by the Works Progress Administration, the County and the State Highway Department. The W. P. A. furnished all labor and the necessary small drainage structures. The County furnished all equipment, operators and bridge

material. The State Highway Department made the survey and drew up the plans under the direction of the County Supervisor, also set the necessary construction stakes and furnished the gravel surface course.

"A set of plans is furnished the W. P. A. prior to approval of the project and any change in these plans during construction will have to be approved by the W. P. A. before such changes can be made. The rules governing the participation of the W. P. A. in this type of work sets out that the construction shall be under the supervision of a Superintendent furnished by them. This man is directly in charge of all construction work-materials and equipment furnished by the other sponsors." Again he said in this letter, "As stated above the Highway Department, in making survey for this road, did so from instructions given by the County Supervisor . . . Since the State Highway Department had no supervision of construction of this road we were not aware of any agreement between the property owners, W. P. A. and County. As also stated above the roadway was built and accepted by the County and W. P. A. before the State began applying the gravel surface course". Again, in a letter from Mr. Davidson to the same attorney, dated June 3, 1943, he said that the Highway Department had no minutes, or records, pertaining to the construction of this road other than a minute showing the purchase of the gravel for and placing the same on this road; that all instructions to the engineer of the Highway Department were given orally by the county, the WPA and the Department. In this letter he also stated that the statement in his former letter reading "As also stated above the roadway was built and accepted by the County and W. P. A. before the State began applying the gravel surface course was a mis-statement. The roadway was accepted by the Department before they would proceed with the gravel surface course". Mr. Davidson further testified that when he referred in

his letter to "supervisor" he meant Mr. Geo. C. Cortright, a member and president of the County Board of Supervisors, who was the member of the board mainly in charge of this project, but who had died before trial of this cause on its merits.

On behalf of complainants it was shown that they complained to Mr. Cortright about this matter and he discussed with them methods of trying to remedy the situation; that in 1942 the county opened some ditches by the side of the road in an effort to relieve the condition; that some five or six men, regular employees of the county at the time, helped to construct the road, using tractors, graders and road machinery of the county, and that after completion of the road these same men, with the county machinery and equipment, worked upon and maintained the road. The act of operating the road machinery and equipment upon the road was shown by oral proof but the minutes of the supervisors were introduced to show the rate of pay to such employees by the county.

It might be added, as throwing light on the situation, that instead of placing the road on the spoil bank of an existing drainage ditch, as was intended by petitioners (although the petition itself says nothing of that), that bank was actually pulled down into the ditch, and the road constructed thereon, thereby entirely stopping up the ditch and rendering it useless for drainage purposes, and that, according to abundant proof on behalf of complainants, culverts too small to carry the water were placed under the road where it crossed another existing drainage ditch, both ditches being a part of the drainage system of Otter Bayou Drainage District of Issaquena, Sharkey and Washington Counties.

Now, who, under these circumstances, had jurisdiction of this road, and is liable, if the facts show damage as a result of these acts?

The road was constructed. It was either a private, a drainage district, a WPA, a State, or a county road. No claim is made it was either a private or drainage district road. Nor is it contended that the Works Progress Administration had any power to do work upon a public county highway without the consent of the county, or that, even though WPA did do work upon such highway that it thereby acquired, or could acquire, any jurisdiction and control over such highway. The Legislature did not place this road under the control and supervision of the State Highway Department. Section 170 of the Constitution of Mississippi confers upon supervisors full jurisdiction over roads, ferries and bridges in their counties, with the power in the Legislature to designate certain highways as state highways and place them under the control and supervision of the State Highway Commission. That has not been done, or attempted, in the instant case. A survey by the state and aid in construction of the road would not divest jurisdiction of the county and invest the State with jurisdiction of this road. Bellard v. Board of Com'rs of Eare County, 31 Ohio App. 224, 167 N.E. 404. That must be done by affirmative act of the legislature. Nor could work upon the road by WPA workers invest such jurisdiction in the Works Progress Administration, a federal agency set up as a temporary expediency to aid employment. That Agency had no power to acquire such jurisdiction. The petition in this case was addressed to and filed with the supervisors. It followed the plan outlined in the statute for establishment of public highways by the county. It proposed to, and when properly acted upon did, vest in the county the title necessary for establishment and construction of a highway for the public. The supervisors accepted that petition, appointed a committee to determine the necessity and feasibility of constructing a public road; the committee reported, in the usual manner, the necessity and feasibility of the road,

and the supervisors, by minutes, declared it should be constructed as a public road. The method prescribed by law was followed. Section 8314, Code 1942. The county, together with the State Highway Department and workers for WPA, all did certain work towards the actual construction. However, neither the Highway Department nor the WPA had the right to, or could, contribute to, or do any work towards, the construction of the road without permission of the supervisors. Section 8330, Miss. Code 1942, Section 6381, Code 1930, authorizes roads to be constructed and worked and maintained by the supervisors by use of different methods. They may purchase or hire equipment, purchase materials, employ labor and workmen, a road commissioner, "and may do any and all things necessary to be done to work, construct, reconstruct and maintain the public roads, and build bridges as herein provided . . . under the direct supervision of the board of supervisors," or it can do all of these things by contract. The board had the power to arrange with the State Highway Department and the WPA to furnish the materials and do the work shown to have been furnished and done by such agencies in this case. That in no wise divested the supervisors of jurisdiction of the road. The proof is competent and sufficient to establish jurisdiction of the road in the county. ██

All facts, except as next stated, are shown by minutes, including employment by the county of workers upon the road. The oral proof simply shows the fact that these employees helped to construct the road and thereafter maintain it by using county machinery. This could be shown by parol. Herod v. Carroll County, 162 Miss. 78, 138 So. 800; Id., 171 Miss. 217, 157 So. 533; City of Vicksburg v. Porterfield, 164 Miss. 581, 145 So. 355; Armstrong v. Itawamba County, 195 Miss. 802, 16 So. (2d) 752.

██ A county is liable for damage to private property caused by the impounding of water thereon which

has resulted from the negligent and improper construction of a public highway by the county. Section 17, Constitution of Mississippi; Copiah County v. Lusk, 77 Miss. 136, 24 So. 972; Rainey v. Hinds County, 78 Miss. 308, 28 So. 875; Covington County v. Watts, 120 Miss. 428, 82 So. 309; City of Vicksburg v. Porterfield, supra.

The Chancellor did not decide whether the alleged wrongful acts caused complainant damage, and, if so, the extent thereof, nor whether mandatory injunction was justified, and, therefore, we express no opinion on those questions. The cause is remanded for determination of these questions upon another hearing.

Reversed and remanded.