CITY OF JACKSON *v.* ROBERTSON.

In Banc. Feb. 27, 1950.

No. 37393 (44 So. (2d) 523)

**E. W. Stennett,** for appellant.

**Pyles & Tucker,** for appellee.

**Roberds, J.**

Robertson, in the bill herein, seeks to enjoin the City of Jackson from impounding surface water and discharging it upon his property and for damages resulting from such acts accruing to the time of filing of the bill. The Chancellor granted the injunction but disallowed damage. The City appeals. Robertson does not appeal.

In this Court the City urges two contentions: First, that no negligence was shown on the part of the City and no relief could be granted appellee without proof of negligence, and, second, that the equity court had no power to issue the injunction.

The cause of action is grounded in this state of facts: Robertson owns Lot 26 of Capitol Heights Sub-division to the City of Jackson. It consists of one acre of land, and lies at the western extremity of the corporate limits of Jackson, and is just east and north of the overpass of the Old Clinton Road over the A. & V. Railroad, the Clinton Road being an extension of West Capitol Street. A commercial building, 40 by 30 feet, in which is operated a drive-in restaurant known as the Bar-B-Q, and a barbeque pit at which meats are prepared for service by the restaurant, are located upon this lot.

The lot is in the shape of a triangle. It is bounded on the south by Capitol Street, on the east by the Old Yazoo City public road, now known as Weola Drive; on the north by the right of way of the A. & V. Railroad. The north and south lines converge, coming almost to a point at the western side of the lot, this western point being the apex of the lot. All boundaries are higher than the lot itself.

In 1929 the City constructed under Weola Drive, near its conjunction with the railroad right of way, and eighteen inch culvert, which emptied onto Lot 26 water falling east of that Drive. At that time the territory lying east of Weola Drive contained no residences: it appears to have been vacant property. A part of the water falling thereon naturally flowed through the culvert under Weola Drive and a part of it flowed south and southwest to West Capitol Street.

It is in evidence that after installation of this eighteen inch culvert, and to the time of substitution of a thirty inch culvert as hereafter stated, the eighteen inch culvert filled up with dirt and debris and water did not flow through it, but, instead, ran south along the eastern side of Weola Drive to Capitol Street.

Later the City supplanted the eighteen inch drain with a thirty inch culvert. This, of course, naturally accelerated and greatly increased the quantity of water flowing

through that culvert onto Lot 26. To try to relieve the condition on Lot 26 the State Highway Department in 1937, in conjunction with and under the supervision of the City, as the Chancellor found, laid a seventy-two inch culvert a few feet west of the apex of Lot 26. That culvert starts on the north side of the Railroad and extends south under the Clinton Highway and empties into a concrete ditch south of said highway. It is ample to carry the water collecting north of the railroad, as well as that falling and being discharged upon Lot 26. Just off the west end, or apex, of Lot 26, and some ten feet east of the seventy-two inch culvert, there was constructed a fifteen inch intake, or what is called in the evidence a "stubout", which is supposed to carry into the seventy-two inch culvert the water coming through the drain under Weola Drive.

Along about 1947, or shortly prior thereto, the area east of Weola Drive became embraced in what is called Johnson Heights. In 1947 the City constructed Beach Street. It is six hundred feet east of Weola Drive and runs parallel thereto. It starts at the north side of Capitol Street and ends on the north at the railroad right of way. The area between Beach Street on the east and Weola Drive on the west is Johnson Heights sub-division, consisting of thirteen acres. That area was cut into and sold as lots. The lots were graded and many residences constructed thereon. The city laid out and constructed through that area Johnson Court Street. At the south it starts at north side of Capitol Street, runs north a short distance, thence northeasterly to, and intersects, Beach Street some two hundred feet south of the railroad. Both Beach and Johnson Court Streets are paved. To drain this area in its improved condition the City installed an underground water system. The main underground conduit carries the water to the thirty inch culvert under Weola Drive. Along Johnson Court Street proper openings were made through which the

surface water was conducted to and concentrated in the storm sewer running to Weola Drive culvert. After these changes were made very little of the surface water from Johnson Heights area reached West Capitol Street, but the quantity and speed of that flowing to Weola Drive culvert were greatly increased and accelerated. The result of that was the water was poured onto Lot 26 in great volume and the fifteen inch "stubout" was entirely inadequate to carry it into the seventy-two inch culvert. It is shown, without dispute, that as a result of that condition water frequently got several inches deep upon the floor of the Bar-B-Q Pit restaurant. Lot 26 was inundated after each heavy rain. It is further in evidence that condition did not exist before the above mentioned changes were made. The Chancellor found, and the proof sustains the finding, that not only did the water often come into this restaurant as above indicated, but that the situation resulting from this condition constituted both a private and a public nuisance. In his finding of fact he said "That at the lower, or southwest point, of the triangle the water gathers and deepens and backs up over the lot until in extra heavy rains it overflows it completely, and covers the floor of the building thereon". He also described the result as "—an unsightly and unsanitary mosquito-breeding pond or marsh . . ." near "one of the busiest and most important thoroughfares" of the municipality. In his decree he said "—that the flooding of said property constitutes a menace to the health of the public, as well as damage to complainant, and that said relief should be granted for the protection of the public health and welfare". He indicated that in his opinion the main trouble was the "stubout" pipe of fifteen inches, leading to the seventy-two inch culvert, was entirely too small and inadequate to carry into that culvert the water coming through the thirty inch drain under Weola Drive, which, in turn, now drains practically the entire area comprising Johnson Heights. He also

found that the City could remedy the condition by a comparatively small outlay of money. The Chancellor not only had before him the testimony given from the stand, but, without objection, he went upon and examined the premises and saw the actual conditions.

 Now, as to the first contention, that is, whether it was essential to the granting of relief that negligence be shown on the part of the City, it would be enough to say the evidence is entirely sufficient to establish negligence. The surface waters are gathered from a thirteen acre area, much of it diverted from its natural flow, and all concentrated into a thirty inch culvert and discharged upon the premises of appellee with an out-take therefore of only fifteen inches. It is a matter of mere common sense that the water must necessarily flood Lot 26. It might here be added that Robertson has no way himself of relieving the condition. To do so he would have to trespass upon property of others.

 A second sufficient answer to the contention is that all the cases and authorities, so far as we know, hold that it is not essential to the grant of relief that negligence be shown where the created condition constitutes a public nuisance. 63 C. J. S., Municipal Corporations, Section 772, page 72; also Section 893, page 294; 38 Am. Jur. 346, Sec. 640, et seq.; City of Vicksburg v. Porterfield, 164 Miss. 581, 145 So. 355, and many other authorities too numerous to cite.

 As to the second contention, that the Chancellor had no power to control and direct the action of the municipal board, appellant cites and relies upon City of Water Valley v. Poteete, 203 Miss. 382, 33 So. (2d) 794. No public nuisance was there involved. No municipal board has the right to create a condition which imperils the health and welfare of the public—to create a public nuisance. Authorities, supra; 38 Am. Jur. p. 348, Sec. 643.

It is noted, in this connection, that the Chancellor did not direct the board to adopt any specific method to relieve the situation. In his oral opinion he did indicate

he thought it could be easily remedied by enlargement of the stubout, and this at small cost, but the decree merely enjoined the board to adopt methods to prevent the flooding of the premises of appellee, and left the Board free to adopt such methods as economy and good engineering might determine.

Affirmed.