CITY OF MERIDIAN *v.* BRYANT, et ux.

No. 40695 March 10, 1958 100 So. 2d 860

*Ethridge, Minniece & Bourdeaux*, Meridian, for appellant.

*Williamson & Williamson,* Meridian, for appellees.

LEE, J.

Joe Bryant and wife, Mrs. Pearl Bryant, sued the City of Meridian, Mississippi, in the County Court of Lauderdale County for damages to their property. From a verdict and judgment in their behalf, the City appealed to the circuit court, where the judgment was affirmed. The City has prosecuted its appeal here.

The declaration charged in effect that the City, in constructing and maintaining storm sewers and outlets near the plaintiffs' property, altered and interfered with the natural surface of the soil and the natural flow of water, and negligently caused or permitted dirt and sand to accumulate and remain in that condition; that the accumulation, so remaining on the hard surfaced portion of the street and on the concrete sidewalk, interfered with the natural flow of the water and its access to an artificial sewer installed by the City; that the water, on that account, accumulated at this point and overflowed into their premises and thereby damaged their garden, fruit trees and dwelling house; and that the City, although notified of such situation, failed and refused to remedy it.

The City's motion for a bill of particulars was overruled except as to the nature and extent of the damage. The answer denied the material allegations of the declaration, and alleged that, if any changes of any kind were made, the same were the acts of contractors; and that the water was following the same course as it had done for many years.

The evidence for the plaintiffs was to the following effect: They lived at 1613, Eighth Avenue, on the west side thereof, in the City of Meridian, near the intersection of Marion Road. Surface water drained down the avenue from north to south. Just north of the home of the plaintiffs, for many years, an underground storm sewer went under the street from east to west, receiving and disposing of the water from the east ditch. This sewer also had an opening on the west side and received the water from that ditch. Thus from both sides of the avenue, water was carried underground to a point behind the property of the plaintiffs, where it was discharged. The City hauled quantities of sand and put it on the surface of the avenue to fill ruts. This sand did not mix with the soil, but washed down to and above the opening of the storm sewer, near an oak tree, on the west side, and, with the other debris, stopped up the opening and prevented the escape of the water. As a result, the collected water flowed over the sidewalk and into the premises of the plaintiffs, damaging their garden, flowers and shrubs, and causing the foundation of the house to rot. Several witnesses gave corroboration both as to the cause of the overflow of water and the resultant damage. The proof also showed that this condition was brought to the attention of the City, and that it failed to remedy the situation.

One witness for the City had never noticed the sewer opening near the oak tree, but he admitted that he had seen accumulations of sand and debris, higher than the sidewalk, with water flowing over the sidewalk six or eight inches deep. An employee of the City disclaimed any knowledge of the sewer opening on the west side, although the other proof was that it had been there many years. The other testimony for the City was to the effect that the water was flowing over a natural course which had been followed from time immemorial, and in minimization of the damages of the plaintiffs.

The City contends here that there was no change in the grade; that it had the right to keep its streets in a reasonably safe condition; that it did not collect and turn loose surface water on the plaintiffs' property; that the proof failed to show any responsibility of the City with reference to the drain or opening; that the water ran over the sidewalk before it got to the opening, even if the City had been guilty of negligence in allowing it to stop up; and that for these reasons, it was entitled to its requested peremptory instruction.

 The cases of Vicksburg v. Porterfield, 164 Miss. 581, 145 So. 355, and Cain v. City of Jackson, 169 Miss. 96, 152 So. 295, and those which follow them, are a complete answer against the City's contention.

In the Porterfield case, supra, the drain under an embankment was obstructed by dirt, tin cans, and other debris, so that the mouth was covered. As a result the water was impounded and rose into the houses on the west side. The City refused to remedy the situation. The opinion said that "the city was using Walnut street as a public street and had assumed control of it, and whether the city placed the fill and drain itself, or when it did, it was under duty to keep same in a condition to serve the purpose for which it was constructed." The opinion cited Nesbitt v. City of Greenville, 69 Miss. 22, 10 So. 452, 30 Am. St. Rep. 521, to show that whether the obstruction is created by the municipality, the city must take notice of such defects as ordinary care will discover. It was also commented that the tendency of drains to become obstructed must be kept in view, and that the situation must be remedied from time to time so as to maintain adequate drainage in each case.

In the Cain case, supra, there was an accumulation of logs, trees and debris, in the culverts, which obstructed the flow of water and caused it to overflow onto the premises in question. The Court cited the Porterfield case, supra, and held erroneous and prejudicial two instructions for

the city, namely, that it was only required to provide a sufficient outlet to take care of the water on all occasions except for unprecedented rainfall, or when logs or debris clogged the outlet, and that it was not liable for obstructions or debris which it did not place there, even though they may have caused the flooding of the property. See also Hodges v. Town of Drew, 172 Miss. 668, 159 So. 298; Thompson v. City of Philadelphia, 180 Miss. 190, 177 So. 39; Stigall v. Sharkey County, 207 Miss. 188, 42 So. 2d 116; City of Jackson v. Robertson, 208 Miss. 422, 44 So. 2d 523; City of Meridian v. Sullivan, 209 Miss. 61, 45 So. 2d 851. In the last mentioned case, the city broke a hole in the appellee's culvert and also negligently failed to keep its own culverts free from obstructions, thus causing the water to flow onto Mrs. Sullivan's property.

■■■ The plaintiffs' instruction, complained about, was not erroneous, but properly submitted the issue as to whether or not the City negligently caused or permitted the accumulation of sand and debris to the extent that it interfered with the natural flow of the water and thus caused it to overflow and damage the property. See the cases cited above.

■■■ Although motions for bills of particulars should ordinarily be sustained, if the court is in the least doubt, the record in this case clearly shows that the City was in nowise prejudiced by the denial of a part of the requested bill of particulars here.

■■■ The City also contends that the jury rendered a quotient verdict. It offered as a witness the only juror who did not assent to the verdict. Counsel concede that the trial judge's refusal to admit this evidence was in accord with previous decisions of this Court. This is manifestly true. Ulmer v. Pistole, 115 Miss. 485, 76 So. 522; Morris v. Robinson Brothers Motor Company, 144 Miss. 861, 110 So. 683. The Court is not aware of any good reason to change in any way the effect of those decisions.

■■■ The small slips of paper, with different amounts thereon, and unexplained, were wholly insufficient to

sustain the allegation that a quotient verdict had been returned. The rule is that the evidence must show affirmatively that the jurors agreed in advance to the return of such a verdict. Buckeye Cotton Oil Company v. Owen, 122 Miss. 14, 84 So. 133. See also 89 C. J. S., Trial, Section 472 c, pp. 113-5.

██ ██ The City also complains that the verdict is excessive. Taking into consideration the cost of the property, the award of the jury, in the sum of $633, appears to be large. The oral proof showed substantial damage. Besides, on motion of the City in the presence of the jury, the court and jury went upon the premises and viewed the same. The court has no way of knowing just what they saw. The inanimate objects may have spoken louder than the words of human witnesses. Under all of the circumstances, the Court is not in position to say that the verdict is so excessive as to evince passion or prejudice.

From which it follows that the judgment must be, and is, affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Kyle* and *Gillespie, JJ.,* concur.